## Eddy Valve Company *v.* Town of Crown Point et al.

[No. 20,392. Filed January 12, 1906. Rehearing denied June 5, 1906.]

1. Constitutional Law. — *Municipal Corporations.* — *Indebtedness.—Ratification.*—Town warrants, issued when such town was indebted above two per cent of its taxable property, are void under article thirteen of the Constitution and they cannot be subsequently ratified by such town or its inhabitants. p. 621.

2. Same.—*Municipal Corporations.—Indebtedness.—Estoppel.*— A town cannot be estopped from defending against town warrants issued when such town was indebted beyond two per cent of its taxable property in violation of article thirteen of the Constitution. p. 622.

3. Statutes. — *Municipal Corporations. — Water-Works. — Purchase.*—The act of 1899 (Acts 1899, p. 568), providing that certain towns and cities may purchase water-works having an encumbrance thereon, has only a prospective operation. p. 623.

4. Municipal Corporations.—*Indebtedness.—School Bonds.*—In estimating a town's indebtedness under article thirteen of the Constitution, school bonds issued by the town school board must be included. p. 626.

5. Same.—*Indebtedness.—Water-Works.—Mortgages.—Constitutional Law.*—A mortgage against a water plant purchased by a town must be included in the liabilities of such town in determining whether it is in debt in excess of the constitutional

limit (Art. 13), though such town in the contract of sale expressly refuses to become liable personally for such debt. pp. 627, 629.

6. MUNICIPAL CORPORATIONS. — *Indebtedness.* — *Extension of Water-Works.*—Town orders issued for an extension of the water mains when the town was in debt beyond the constitutional limit (Art. 13) are void, the attempted purchase of such works being void. p. 627.

7. VENDOR AND PURCHASER.—*Municipal Corporations.—Water-Works.—Mortgages.*—The purchase by a town of a water plant, encumbered by a mortgage, with a provision in the contract of purchase that it is bought subject thereto, estops such town from denying the validity of such mortgage p. 628.

8. CONSTITUTIONAL LAW. — *Municipal Corporations.* — *Indebtedness.—Implied.*—The constitutional inhibition against indebtedness of municipal corporations (Art. 13) applies to implied as well as express obligations. p. 629.

9. SAME.—*Limitations.—Evasion of.—Indebtedness.*—Municipal corporations cannot by evasion avoid the constitutional inhibition against indebtedness (Art. 13). p. 630.

From Porter Circuit Court; *William B. Biddle,* Special Judge.

Action by the Eddy Valve Company against the Town of Crown Point and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Grant Crumpacker* and *William A. Ketcham,* for appellant.

*Johannes Kopelke, Thad. S. Fancher* and *Frank B. Pattee,* for appellees.

JORDAN, J.—This action was commenced by appellant in the Lake Circuit Court against the town of Crown Point and its codefendants, the Crown Point Water-Works Company and the Seckner Contracting Company. On change of venue the cause was tried in the Porter Circuit Court.

The complaint is in three paragraphs, each of which declares upon and seeks to recover against said town on a warrant for $1,400 issued by the town of Crown Point on February 14, 1896, to the Crown Point Water-Works Company. Each of these warrants before maturity was, for value received, assigned by indorsement to the Seckner

Contracting Company, which company assigned said warrants by indorsement to the plaintiff. Copies of the warrants, together with copies of the indorsements, were filed with the complaint and made a part thereof. A judgment is demanded against the town, on the complaint as an entirety, for the sum of $6,000.

The town of Crown Point appears to have been the only defendant that filed an answer to the complaint. It was in three paragraphs: First. General denial. The second paragraph averred as a defense facts disclosing that said town at the time it issued the warrants in suit was already indebted in excess of two per cent of the value of taxable property therein, etc., and that therefore the warrants were void, and unenforceable against said defendant. The third paragraph alleged that the consideration of the warrants sued upon was the purchase of a certain water-works plant for said town, which plant at the time it was purchased and conveyed to the town was encumbered by a mortgage lien thereon to the amount of $35,000; that by reason thereof the defendant town was not authorized to purchase said water-works so encumbered, and that the purchase was, therefore, *ultra vires,* etc.

The plaintiff replied to the second paragraph of answer in two paragraphs: First. General denial. The second paragraph alleged that the town of Crown Point was incorporated under the general laws of this State, and that in the year 1895 it had a population of 2,500, and the value of the taxable property therein was $832,185; that it was the county seat of Lake county, Indiana, and that its outstanding indebtedness, as then claimed to exist, was $10,800, which arose out of the issue of bonds for the benefit of the school town of Crown Point. The paragraph then proceeds to set up facts to show the necessity of the town's being supplied with water for domestic purposes and fire protection, and further facts to disclose that said town had neither money nor credit to enable it to construct

water-works. In order to obtain water for the above uses the town on October 10, 1895, by an ordinance passed and adopted by it, granted the right and privilege to the Crown Point Water-Works Company to establish and construct within said town a system of water-works. Various provisions of this ordinance are set out in the pleading. It is further shown that the Crown Point Water-Works Company was incorporated on October 9, 1895, the day immediately preceding the passage of the aforesaid ordinance. The purpose, or object, of the incorporation of this company was to supply the town of Crown Point with water. The number of water hydrants to be used by the town, the measurement by meters of the water consumed, the amount of rentals to be paid for water hydrants, and the prices to be charged consumers for the use of water are all provided for in the ordinance. The latter further provided that the Crown Point Water-Works Company might mortgage its plant, or water system, to an amount not exceeding $35,000 to enable it to secure money with which to construct the water-works, and that in the event of the execution of this mortgage the town should pay the hydrant rentals direct to the mortgagee or his trustee.

By another provision of the ordinance in question the town reserved to itself, or was to have the right at its option, for a period of thirty days after the completion of the water plant, to purchase and take over said plant from said company on the following terms and conditions: The conveyance was to be for $1,000, payment to be made at such time and in such manner as might be agreed upon between said town and said water-works company, but to be made on or before said town should take possession of said water-works. The sale was to be made subject to any encumbrances to secure an indebtedness placed on the plant by the Crown Point Water-Works Company, together with accrued interest thereon, and the town was to agree to keep the plant in good repair and condition. The deed of con-

veyance of the plant to the town was to provide that the
conveyance was to be made expressly subject to the encum-
brance, but the town was not to assume the payment of such
encumbrance. It is alleged that the water-works plant was
constructed by said Crown Point Water-Works Company
in compliance with the ordinance, and that while the plant
was in course of construction the authorities of the town
required said company to make additions thereto beyond
the requirements of the ordinance, at an expense of $4,200.
To secure money to pay for constructing the plant, said
company borrowed $35,000, and executed bonds therefor
and secured the payment thereof by a mortgage upon said
plant and system of water-works. The reply discloses that,
after said plant was encumbered, the town of Crown Point
availed itself of the option provided for in the ordinance in
question, and purchased the plant from the company for
$1,000, subject to the mortgage thereon of $35,000; and
and at the request of the town authorities the water plant
was sold and conveyed by said company to the town, sub-
ject to said mortgage lien. The town, however, was not to
assume or agree to pay said mortgage indebtedness, but
only to purchase and to take said plant subject to said lien.

It further appears from the averments of this reply that
the inhabitants of the town at all times after the introduc-
tion by the town board of the ordinance in question had
knowledge of the construction of the water plant by said
company, and that the town contemplated purchasing the
same and taking a conveyance thereof, and that said pur-
chase and conveyance would be made unless the town au-
thorities were enjoined from so doing; but, notwithstand-
ing these facts, said inhabitants acquiesced in and assented
to said purchase. Other facts are alleged to show that from
and after March 7, 1899, but prior to May 15, 1901, the
town of Crown Point and its inhabitants, with full knowl-
edge of the passage of an act by the legislature of this
State, in force March 7, 1899 (Acts 1899, p. 568), under

the provisions of which towns and cities were empowered to purchase water-works, accepted all of the benefits of the purchase and conveyance of said water-works by the town, and made use of the same as the property of the town for furnishing water for domestic purposes and fire protection, with the full knowledge that the warrants in suit which constituted the consideration for such purchase and conveyance remained outstanding and unpaid.

It is further averred that the indebtedness of the town on and after March 7, 1899, had so diminished as to fall below the constitutional limitation of two per cent of the assessed value of the taxable property within the town, and that its revenues at that time were more than sufficient to pay said warrants; that the town at that time had full authority to make said purchase and become indebted on account of the warrants in suit. It is alleged that under the facts set up the town and the inhabitants thereof ratified the issuing of the warrants in suit and should not be heard to set up as a defense to this action that at the time the town incurred the indebtedness by issuing these warrants it was indebted in excess of two per cent of the taxable property therein.

The plaintiff replied to the third paragraph of the answer in three paragraphs: First. General denial. In the second paragraph substantially the same facts are averred as are alleged and set out in the second paragraph of reply to the second paragraph of the answer. The second paragraph of reply to the third paragraph of the answer, under the facts, relied upon an estoppel. The same facts are set up in the third paragraph of the reply to show that there was a ratification on the part of the town and its inhabitants. A demurrer was sustained to the second paragraph of plaintiff's reply to the second paragraph of answer, but the demurrer to the reply was overruled as to the third paragraph of the answer. Upon the issues joined the cause was submitted to a jury for trial.

At the close of the evidence in the case, the court refused to give any of the instructions tendered by the plaintiff, and refused to permit the parties to argue the case before the jury; but, on the motion of the defendant Town of Crown Point, gave to the jury the following peremptory instruction: "The court instructs the jury that in its opinion the allegations of the second paragraph of answer of the town of Crown Point have been sustained by sufficient proof on the part of said defendant, and such proof has not been overcome by any proof offered in behalf of the plaintiff, and that, therefore, the jury is required to find a verdict in this cause for said defendant town." The jury accordingly returned a verdict in favor of the town.

Plaintiff filed a motion for a new trial, assigning as reasons therefor: (1) The statutory grounds; (2) error of law occurring at the trial in the admission of certain evidence particularly mentioned; (3) in refusing to give the instructions requested by the plaintiff; (4) in instructing the jury to find for the defendant Town of Crown Point. This motion was overruled, and judgment was rendered by the court on the verdict.

The errors relied on for reversing the judgment of the lower court are: (1) Overruling the demurrer of the appellant to the third paragraph of appellee's answer; (2) sustaining the demurrer to appellant's reply to the second paragraph of appellee's answer; (3) overruling the motion for a new trial.

The conclusion which we have reached in regard to the ruling of the court in directing the verdict upon the evidence renders unnecessary a consideration of the first alleged error. Appellant's counsel insist that the court erred in holding on demurrer that the second paragraph of the reply to the second paragraph of the answer was insufficient.

Article thirteen of the Constitution of this State, which limits the indebtedness of municipal corporations, reads as

follows: "No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate exceeding two *per centum* on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void: Provided, that in time of war, foreign invasion, or other great public calamity, on petition of a majority of the property owners, in number and value, within the limits of such corporation, the public authorities, in their discretion, may incur obligations necessary for the public protection and defense to such an amount as may be requested in such petition."

In their argument in support of their contention, counsel assert "that the rationale of the rule that a town's being prohibited [by this provision of the Constitution] from becoming indebted beyond a fixed per cent of its taxables cannot ratify by resolution, or otherwise, a transaction by which it became so indebted is that the town is acting through agents whose powers are limited, and of which limitation all must take notice, and that the officers, being prohibited in the first instance from doing the act, cannot therefore ratify. The constitutional provision is for the protection of the inhabitants against unlawful and unauthorized acts of their agents. And what their agents cannot do directly they cannot accomplish indirectly by ratification or by accepting benefits. There is nothing in the cases, so far as we are advised, to prohibit the inhabitants of a municipality—they being in truth the municipality—from ratifying the unauthorized acts of their agents. There is no constitutional objection to the acceptance by the inhabitants of a city of a permanent benefit and pledging their property therefor. Here the inhabitants of the town in question had

received a great benefit and one which they could not afford to do without. Provisions had been made whereby this improvement was to be paid for as the bonds became due, by a special tax to be levied for that purpose and no other. The inhabitants of the town had knowledge of this arrangement, and acquiesced in it, and consented that their property might be pledged to the payment thereof as such bonds became due. And after the passage of the act of 1899, they continued to use and exercise ownership over the property. We earnestly insist that such acts constituted a ratification by the inhabitants of the town of the unauthorized acts of their agents. The town acted under a construction of their powers by which a great advantage has accrued to them, and they will not now be heard to maintain a different construction to the detriment of one who has been misled thereby. This, although possibly technically an estoppel, and not a ratification, brings about the same result which we insist is right and equitable. We maintain, therefore, that the reply to the second paragraph of the answer was sufficient to avoid it, and that the demurrer thereto ought to have been overruled."

It is apparent from the argument of counsel that they rely upon what they consider, under the facts set up as a reply to the second paragraph of the answer, should

1. be held to constitute a ratification by the inhabitants of the town of Crown Point of the illegal issuing of the warrants in suit, or if the facts do not in a strict sense establish a ratification, then, as they assert, they must be held sufficient to create an estoppel. We are not impressed with this argument. It will be observed that the facts alleged in the paragraph of the answer in question show that the warrants in suit were issued by the town at a time when its existing indebtedness was in excess of the amount limited by the provisions of the above article of the state Constitution, and therefore these obligations were, by virtue of the express and emphatic provisions thereof,

declared to be void, and, hence, were unenforceable as against the town. As they were void at their very inception by reason of being issued in violation of the constitutional provision, therefore, under these circumstances, they could not be made valid and binding upon the town by a subsequent ratification, either expressly or impliedly.

Under the facts alleged in the answer, when tested by the above provision of the Constitution, it is apparent that the town was absolutely deprived of all power to incur any additional enforceable indebtedness, save and except that which became necessary in time of war, etc., as provided by said article. Certainly, under these circumstances, there is nothing in the case upon which appellant can found its contention that the inhabitants of the town had the power to ratify these warrants. As a rule, the power to authorize originally a thing to be done is a condition precedent to the power or right of a subsequent ratification. It is true that a ratification, properly made, by a municipal corporation in a case or matter in which it had previous authority or power to act, is, in a legal sense, considered in its effect as the equivalent of the exercise by the municipality of its power in the first instance. But in no case can the act of ratification have any greater force or effect than the exercise by the municipality of its previous authority or power to act in the matter. It follows that the invalidity of the warrants having been declared, or fixed, by the Constitution, neither the town nor its inhabitants could have been invested by the legislature with the power of ratifying their issue, and thereby making them valid and enforceable obligations against the town.

Equally untenable is the insistence of appellant that, under the facts alleged in the reply, the town of Crown Point and its inhabitants must be held to be estopped from interposing the defense set up in the answer. Where a municipal corporation is under the law invested with the power or authority to act or enter

2.

into a contract, it may, as the authorities affirm, estop itself by its conduct, silence, or acquiescence, in like manner as a natural person; but where, as in the case at bar, it is shown that there is a total absence of such power on its part, then there can be no estoppel as against the municipality or its inhabitants. It follows that the second paragraph of appellant's reply to the second paragraph of answer was insufficient, and the demurrer thereto was properly sustained. The following authorities fully support our conclusion and the principles of law which we assert: *City of Laporte* v. *Gamewell, etc., Tel. Co.* (1896), 146 Ind. 466, 476, 35 L. R. A. 686, 58 Am. St. 359, and authorities there cited; *City of Parkersburg* v. *Brown* (1883), 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238; *Balch* v. *Beach* (1903), 119 Wis. 77, 95 N. W. 132; *Dixon County* v. *Field* (1884), 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360; *Lake County* v. *Graham* (1889), 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065; *Windsor* v. *City of Des Moines* (1900), 110 Iowa 175, 81 N. W. 476, 80 Am. St. 280; 20 Am. and Eng. Ency. Law (2d ed.), 1181, 1182; *Hill* v. *City of Indianapolis* (1899), 92 Fed. 467; *Daviess County* v. *Dickinson* (1886), 117 U. S. 657, 6 Sup. Ct. 897, 29 L. Ed. 1026; *Lewis* v. *City of Shreveport* (1883), 108 U. S. 282, 2 Sup. Ct. 634, 27 L. Ed. 728; *State* v. *City of Pullman* (1900), 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836.

3. An act of the legislature in force March 7, 1899 (Acts 1899, p. 568), which purports to authorize towns and cities of this State having a population less than thirty thousand to purchase water-works subject to an existing mortgage debt, such cities and towns, however, not to assume or become directly or indirectly liable for the payment of such mortgage encumbrance, is wholly prospective, and has no application whatever to purchases of water-works which were antecedent to its passage.

We pass to an examination of the facts established by the evidence in order to determine whether the ruling of the court in directing a verdict in favor of appellee was right. The evidence given upon the trial, together with the agreement of the parties made in open court, fully establish that appellee, a town incorporated under the general laws of this State, did, on February 14, 1896, issue the warrants in suit, each for the sum of $1,400, being in the aggregate $4,200. For the purpose of convenience we will refer to these warrants by numbers. Number one is as follows:

"$1,400.           Clerk's Office.
            Crown Point, Indiana, February 14, 1896.
Treasurer of Corporation of Crown Point:
    Out of the town taxes for the year 1897, when collected, pay to the Crown Point Water-Works or order $1,400, with interest thereon at the rate of six per cent per annum until paid, on account of extension of water-works.
    Due July 1, 1896.
                              M. B. Rockwell,
                                President of Board.
    B. C. Morton, clerk."

The other two warrants are the same as the first, except number two is to be paid out of the taxes for the year 1898, and number three is to be paid out of the taxes for 1899. By successive assignments appellant appears to have become the owner and holder of these warrants. An ordinance was passed and adopted by appellee town on October 10, 1895, whereby permission or authority was granted to the Crown Point Water-Works Company, a corporation organized under the laws of Indiana, to construct, establish and maintain a system of water-works in the town of Crown Point. This ordinance is the same as is set out in appellant's reply heretofore considered, hence we need not again state what is previously shown in respect to its various provisions. It may be said, however, that this ordinance expressly provides

that the Crown Point Water-Works Company "may mort-gage said entire water-works plant, including the engines, pumps, stand-pipes and the real estate connected therewith."

On February 12, 1896, said water-works company exe-cuted a deed of conveyance whereby, as stipulated, it sold and conveyed to the town of Crown Point the water-works plant and system which it had constructed and then owned, together with all of the real estate thereto belonging. This deed recites that by the provisions of the above ordinance the town of Crown Point reserved the right to exercise its option to purchase the plant within thirty days after its completion for the sum of $1,000. It further recites that under the provisions and stipulations of said ordinance the water plant was to be conveyed to the town subject to a mort-gage thereon of $35,000 in favor of the Illinois Trust & Savings Bank, of Chicago; that said plant had been fully completed, and was on February 12, 1896, approved and accepted by said town, and the latter has exercised the option to purchase the plant, etc. Therefore, the deed recites that said water-works company, "in consideration of the sum of $1,000, cash in hand paid, grants, bargains, sells and conveys to the town of Crown Point the following property," describing the real estate, and all the rights and property belonging to said system of water-works.

As this deed recites, and as the facts show, said water-works company on November 1, 1895, encumbered its said water plant, or system, with a mortgage executed to the Illinois Trust & Savings Bank, of Chicago, Illinois, to secure an indebtedness of $35,000, evidenced by certain bonds. This mortgage appears to have been executed by the company in order to obtain money with which to con-struct the plant, or system, of water-works. In the deed of conveyance to the town the mortgage, together with the record wherein such mortgage was recorded in the re-corder's office of Lake county, Indiana, is referred to, and it is therein expressly stipulated that the conveyance of the

water-works to the town is to be subject to said mortgage
and all of its terms and conditions; but it is provided that
the town of Crown Point does not assume the payment
thereof, but does covenant and agree by the accepance of
the conveyance to keep said water-works plant in good
repair and operating condition, and to operate and main-
tain the same in compliance with the terms of operation
and maintenance specified in the ordinances of October 10,
and November 27, 1895.

It was agreed on the trial that at the time the warrants
in question were issued the taxable value of the property
within the town of Crown Point was $826,530, and that
the limit of its indebtedness under the Constitution was
$16,530.60.   At and prior to the time of the purchase by
the town of the water plant the evidence establishes that its
then existing indebtedness was as follows:

Schoolhouse bonds ....................$10,800.00
    Interest thereon ..................    457.19
Remainder unpaid on a certificate of indebt-
    edness for street improvements........   3,997.41
Money borrowed and bonds issued therefor
    to enable the town to subscribe for and
    purchase stock in the aforesaid water-
    works company .....................   2,500.00
    Interest thereon ..................     18.32
Money borrowed from fire company of
    Crown Point ......................    500.00
    Interest thereon ..................    132.66
Due McMahan for services as attorney....    200.00

Total ...........................$18,605.58

This statement of the town's indebtedness at least *prima
facie* may be said to show that at the time it purchased the
water plant and issued the warrants in question it
4.   had already incurred an indebtedness in excess of
the constitutional limit.   Appellant's counsel, how-
ever, contend that certain items of the above statement of

indebtedness for reasons which they advance must be excluded from the computation, and when this is done they insist that the town at the time in question was only indebted to the total amount of $11,129.10. This, as they assert, left "a balance of debt-incurring capacity" on the part of the town at the time the warrants were issued of $5,401.50, more than sufficient to authorize the issuing of these obligations. It must be conceded, however that under the decisions of this court the school bonds issued by appellee are to be considered in the computation as a part of its indebtedness. *Wilcoxon* v. *City of Bluffton* (1899), 153 Ind. 267; *Scott* v. *City of Goshen* (1904), 162 Ind. 204.

Conceding that the indebtedness of the town, independent of the mortgage of $35,000, was only $11,129.10, nevertheless, from the view which we entertain, this mortgage, by which the water plant was encumbered, must be dealt with and considered in the estimate or computation of the town's liabilities. It, under the circumstances, we think, became a liability against the town within the meaning of the constitutional provision herein involved, notwithstanding the fact that the deed of conveyance of the water plant to the town recited, or stipulated, in effect that while the town accepted said plant subject to said mortgage encumbrance, it did not assume the payment thereof.

The warrants in suit apparently arose out of the transaction in respect to the purchase of the water-works, and as they recite they were executed on account of the extension of said works, which extension was made by the water-works company immediately preceding the conveyance of the plant to the town. These warrants were issued by the town on February 14, 1896, two days after the purchase and conveyance of the water plant. At that date the plant was held and owned by the town as a part of its public property, burdened and encumbered

with a mortgage lien or liability of $35,000. When this mortgage indebtedness or liability is considered and taken into account in the computation, or estimate, of the town's indebtedness, or liability, as it must be, it is evident that at the time the warrants were issued the liability of the town was far in excess of the constitutional limitation.

The contention, however, of appellant's counsel is that inasmuch as it was stipulated in the deed conveying the water plant to the town that the latter did not 7. assume or agree to pay the encumbrance thereon, no debt or liability of the town within the meaning of the Constitution was created. It may be said that the only effect of this express stipulation, that the town did not assume or agree to pay the indebtedness secured by the mortgage, was more fully to emphasize the fact that by accepting a conveyance of the water-works subject to the encumbrances thereon, it did not intend thereby to incur any personal liability, or obligation, to pay the mortgage indebtedness. Or in other words, as between the town and the mortgagee, the remedy of the latter should be confined alone to the mortgaged property. By accepting the conveyance subject to the mortgage the town recognized the latter as a valid existing encumbrance on said property. *Muncie Nat. Bank* v. *Brown* (1887), 112 Ind. 474; *Old Nat. Bank* v. *Heckman* (1897), 148 Ind. 490. It is evident, therefore, that the town cannot defeat a foreclosure of this mortgage lien, hence it will either be required to pay the encumbrance in question or lose the money which it has paid for the plant, and all of the other benefits to be derived from the purchase thereof. It would be unreasonable to believe that under these circumstances the town did not intend to pay off the encumbrance; but on the contrary actually intended that the mortgage should be foreclosed and the property sold thereunder, thereby depriving the town and its inhabitants of the use and benefit of the water plant.

It will be observed that the Constitution in emphatic language declares that no municipal corporation "shall ever become indebted, in any manner or for any pur-

8. pose," etc. This language is certainly plain and emphatic and of "wide sweep," and the prohibition thereby declared is as applicable to and as effectual against an implied liability as it is against an express liability or obligation. In the appeal of the *City of Ottumwa* v. *City Water Supply Co.* (1902), 119 Fed. 315, 56 C. C. A. 219, 59 L. R. A. 604, Judge Lochren, in considering a provision of the constitution of Iowa similar to that of our own herein involved, very aptly said: "The incurring of indebtedness beyond the amount limited is absolutely and unqualifiedly prohibited, no matter what the pretext or circumstances, or the form which the indebtedness is made to assume. It curbs equally the power of the legislature, the officials, and the people themselves; and was designed to protect the taxpayers from the folly and improvidence of either, or of all combined."

It is not essential to a mortgage that there should be any express agreement or promise by the mortgagor, or any other person, to pay the debt or obligation secured; for in the absence of such an agreement under the law of this State the remedy of the mortgagee is expressly confined to the mortgaged property. §1110 Burns 1901, §1096 R. S. 1881; *Fletcher* v. *Holmes* (1865), 25 Ind. 458.

Assuming, for the sake of argument, that appellee town, instead of the water-works company, had constructed and owned the water plant in question, and had the

5. authority or power to mortgage such property, and thereunder had encumbered the plant with a mortgage lien without expressly agreeing or promising in any manner to pay the sum or amount secured, then under the circumstances such mortgage encumbrance, in a legal sense, would, at least indirectly, or impliedly, be a liability of the town which it would ultimately be required to pay, or lose

the mortgaged property through a foreclosure sale. Certainly, then, in reason, under these circumstances, no statement or estimate of its liabilities would be correct which excluded or did not take into consideration such mortgage encumbrance on its property. There is no substantial difference or distinction between the case as above assumed and the one actually presented under the facts herein.

Conceding that the town was authorized to purchase the water plant after it had been constructed by the waterworks company, it could not avoid or evade the prohibition of the Constitution in respect to the amount of its indebtedness or liability by purchasing the plant and taking a conveyance thereof subject to the mortgage in question and thereafter exclude from the amount of its liabilities such mortgage encumbrance in determining whether its existing indebtedness was in excess of the constitutional limit. If it could evade the Constitution in this manner, then the prohibition in question would virtually afford no security to taxpayers whom it was intended to protect by keeping the indebtedness of municipal corporations within a prescribed limit.

Without assigning further reasons for our conclusion, we are constrained to hold that appellee town, by purchasing and taking over as its property the water-works plant subject to the mortgage of $35,000, thereby created against itself, at least, an implied liability or indebtedness within the intent of the Constitution, notwithstanding the fact that it did not personally obligate itself to pay said encumbrance. Therefore, it follows that such mortgage liability must be considered or taken into account in determining whether appellee, at the time it issued the warrants in suit, was indebted beyond the limit prescribed by our fundamental law. That, under the circumstances, it was is certainly evident, and beyond successful controversy. The following decisions either directly or indirectly sustain the holding and conclusion which we have reached: *Voss*

v. *Waterloo Water Co.* (1904), 163 Ind. 69, 66 L. R. A. 95, and cases there cited; *Scott* v. *City of Laporte* (1904), 162 Ind. 34, and cases there cited: *Ironwood Water-Works Co.* v. *City of Ironwood* (1894), 99 Mich. 454, 58 N. W. 371; *Browne* v. *City of Boston* (1901), 179 Mass. 321, 60 N. E. 934; *Fidelity Trust, etc., Co.* v. *Fowler Water Co.* (1902), 113 Fed. 560; *Litchfield* v. *Ballou* (1885), 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; *Mayor, etc.,* v. *Gill* (1869), 31 Md. 375; *Earles* v. *Wells* (1896), 94 Wis. 285, 68 N. W. 964, 59 Am. St. 885; *Windsor* v. *City of Des Moines* (1900), 110 Iowa 175, 81 N. W. 476, 80 Am. St. 280; *City of Joliet* v. *Alexander* (1902), 194 Ill. 457, 62 N. E. 861; *Culbertson* v. *City of Fulton* (1888), 127 Ill. 30, 18 N. E. 781.

Other important and interesting questions are presented and discussed by appellant's learned counsel, but in view of the conclusion which we have reached these questions become immaterial. It follows that the warrants in suit are invalid and unenforceable obligations as against appellee, hence the trial court did not err in directing the verdict in question.

The judgment is therefore affirmed.