## CITY OF LOGANSPORT ET AL. v. JORDAN.

[No. 21,022. Filed October 29, 1908.]

1. MUNICIPAL CORPORATIONS.—*Indebtedness.*—*Constitutional Law.* —Where a city is indebted in a sum greater than two per cent of the assessed value of the property within its limits, and there is no money which can be derived from the current revenue, the contracting of a debt is prohibited by article 13 of the Constitution, the purpose of the debt being immaterial. p. 127.

2. SAME.—*Indebtedness.*—*Contracts for Reduction of.*—*Constitutional Law.*—A contract with an attorney or agent to contest the indebtedness of a city whose debt is above two per cent of the assessed value of the property within its limits, is not in violation of article 13 of the Constitution, forbidding the contracting of a debt when the corporation's indebtedness exceeds two per cent of such valuation. p. 127.

3. SAME.—*Indebtedness.*—*Time of Accrual.*—*Sewers.*—*Acceptance.* —The debt occasioned by the construction of a city sewer arises at the time of the acceptance of such sewer; and the fact that the city was to pay the debt in instalments does not avoid the constitutional inhibition (Art. 13) against the creation of an indebtedness when the corporate debt is in excess of two per cent of the assessed value of the property within its limits. p. 128.

4. APPEAL.—*Right Result.*—Where the right result was reached by the trial court, its judgment will not be disturbed on appeal. p. 134.

From Cass Circuit Court; *Jere West*, Special Judge.

Suit by Michael A. Jordan against the City of Logansport and others. From a decree for plaintiff, defendants appeal. *Affirmed.*

*George W. Funk, M. Winfield, George C. Taber, D. B. McConnell, McConnell, Jenkines, Jenkines & Stuart, Lairy & Mahoney* and *Myers & Yarlott,* for appellants.

*George W. Walters, B. F. Long, W. H. H. Miller, C. C. Shirley* and *S. D. Miller,* for appellees.

JORDAN, J.—This action was instituted on October 1, 1906, by appellee, a resident taxpayer of the city of Logansport, to enjoin that city from incurring and paying any indebt-

edness in its corporate entity, in violation of the provisions of article 13 of the state Constitution, which provides: ''No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void.''

Members of the city's common council and others of its officials, together with certain other persons, were made codefendants. The indebtedness in controversy, as claimed, arises out of the construction of a certain sewer by the city of Logansport. On a trial before the court on the issues joined, there was a finding in favor of plaintiff, and, over the separate motions for a new trial by the several defendants, the court entered its decree, perpetually enjoining the city of Logansport ''from making any appropriation of money from the treasury of said city for the payment of any part of the cost of constructing the Herring system of sewerage on the west side of said city of Logansport, constructed by defendant Uhl, under contract with said city.'' The decree further provided that the ''defendants are each and all perpetually restrained, enjoined and prohibited from levying any tax upon the property in said city, to be collected or used for the purpose of paying any part of said cost of such sewerage system, and from in any manner providing for the payment of the cost of said system in said city,'' etc. From this decree the city and the other defendants prosecute this appeal, and have jointly and severally assigned errors.

A condensed statement of the facts appears to be as follows: For many years the city of Logansport had experienced trouble in taking care of the storm water from its streets and alleys in that part of the city known as the ''West Side.'' At various points it overflowed private prop-

erty after every heavy rain, and did much damage. There was no sewerage system in that part of the city. This condition of affairs apparently was controlling in causing the city council on March 1, 1905, to pass a declaratory resolution for the construction of a sewerage system to drain said part of the city. On September 5, 1903, an owner of property on the west side, filed suit against the city for damages resulting from the discharge of storm water from the streets and alleys upon his property, and for an injunction against the further continuation thereof. Trial in the case was had, and a special finding of facts was made, with conclusions of law thereon, and filed by the court on March 8, 1905. This was eight days after the declaratory resolution, ordering the construction of the sewerage system, was passed by the city council. On March 9, 1905, the court entered its decree, granting plaintiff $100 damages, and perpetually enjoining the city from permitting the water from its streets and alleys to accumulate and overflow on plaintiff's property, and mandating the city to remedy the situation complained of by making alterations and improvements in certain streets and gutters.

While this case was pending, but before any finding had been made, the city council passed a resolution, as hereinbefore stated, declaring the existence of a necessity for the construction of a sewerage system on the west side of the city, and providing for the construction of said system, and adopting detailed plans and specifications therefor, which action was taken and the sewer ordered constructed under the provisions of the act of 1901 (Acts 1901, p. 355, §4275b Burns 1901). Bids were advertised for and received April 5, 1905, and were opened on April 7, 1905, and on April 11 the contract was let to appellant Dennis Uhl, and a contract entered into between him and the city.

The sewerage system, as ordered, appears to have been intended, not only for the benefit of property owners, but also for the general benefit of the city of Logansport, by

furnishing an outlet for the storm water from the streets and alleys of the city, and because of this fact said sewer was constructed much larger than it would have been if the system had been only for sanitary purposes, and for the benefit of private property. The work of constructing the sewer under the contract was done under the supervision of the board of public works of the city, and was completed on or before February 19, 1906, and was found to cost, under the contract, the sum of $173,574.39, and on this latter date was accepted by the city as completed. Soon thereafter the common council referred the matter of making assessments for the payment of the cost of the sewer to the board of public works under the provisions of the act of 1901, supra, and on June 16, 1906, this board filed its report with the clerk of the city, showing all its proceedings, and setting out the assessments it had made, which showed that the aggregate assessments against private property, representing the total specific benefits, was $121,195.96, and the balance of $52,-378.43 was assessed against the city of Logansport. This report was received by the council on July 3, 1906.

On August 1, 1906, the common council, by resolution, duly adopted, and, after a hearing extended to property owners, modified the assessments made and reported by the board of public works, by reducing all assessments against private property twelve and one-half per cent, and added the reduction to the amount assessed against the city, and confirmed the assessments as so modified. By this resolution the total special assessments on private property aggregated $106,083.30, and the balance of $67,491.09 was assessed and charged against the city as its portion of the benefits derived from the sewer. By this resolution the council further provided that this $67,491.09 should be paid in ten equal annual instalments, and that a special tax levy should be made each year for that purpose. Soon after this assessment was made against the city, a property owner and taxpayer of the city filed suit against the appellants,

praying that the city be enjoined from paying, or providing for the payment of, any part of the assessment against the city, on the ground that the city was already indebted far beyond two per cent of its taxable property, and had no cash on hand with which to pay any part of the assessment. Hearing was had before the court and a temporary injunction granted as prayed.

Soon after this the defendants in the latter suit moved that the court modify this injunction by confining it strictly to the assessments made by the city council on August 1, 1906. In September, 1906, for the purpose of securing a new assessment, contractor Uhl, one of the appellants in this case as relator, filed an action in the Cass Circuit Court, against the city of Logansport and its board of public works, praying that they be mandated to make a new assessment for the payment of the contract price of said sewerage system in accordance with the provisions of "an act concerning municipal corporations," approved March 6, 1905 (Acts 1905, p. 219, §3462 et seq. Burns 1905), it being the theory of the plaintiff that the former assessments had been made under a wrong statute. The result of this action was that a peremptory writ of mandate was issued by the court, directing the board of public works to proceed at once to make a new assessment under the act of 1905. In pursuance of this mandate of the court the city's board of public works immediately convened, and by resolution voted to begin at once the work of making new assessments, and at the time of the commencement of the suit at bar it was engaged in making such assessment. On October 1, 1906, before the commencement of this suit, the board of public works had proceeded so far in making these assessments that it had determined approximately what the assessment against the city would be. On that day the board addressed an official communication to the city controller, announcing therein that the benefits accruing to the city from the sewerage system in question were "largely in excess of $15,000," and asking for

an appropriation "for the use of our department in that amount to pay the same." In pursuance of this communication and request, the controller, with the assistance of the city's attorney, proceeded to prepare his recommendation to the mayor, therein advising the appropriation of $15,000 for the payment of part of the city's benefit derived from the sewer, and the making of a special levy of seventeen cents on each $100, by which to raise the amount. These steps appear to have been taken on the evening of October 1, 1906, at which time members of the common council and the mayor of the city were waiting in the office of the city attorney to have prepared the proper ordinances making the appropriation and tax levy suggested. The attorneys for appellant Uhl were in consultation with the board of public works, members of the common council and city officials.

There is evidence to show that it was the intention of the proper city authorities to make the suggested appropriation and tax levy; but while the city attorney was engaged in preparing the recommendation of the controller to the mayor, and before he had time to prepare the appropriation or tax levy ordinances, the suit in bar was commenced and a temporary restraining order served on appellants, preventing further action. It is shown that the city of Logansport, at the time the proceedings for the construction of the sewer in question were instituted by the common council, and at the time said sewer was completed and accepted, and also at the time this suit was commenced, was already indebted over the two per cent limit, as fixed by article 13 of our Constitution, and at the time this suit was commenced there was no cash on hand to be devoted to sewer purposes, and all money that would be received by the city from taxes or other sources for the year 1905, and preceding years which was collectible in 1906, had already been appropriated for other necessary purposes. The tax levy for 1906, and all appropriations for the year 1907, had been made a week or two before this suit was instituted, but no provision had been

made for money with which to pay any part of the cost of the sewerage system in controversy. It appears that the matter in respect to the sewer had been before the common council and the city officials continuously since March 1, 1905, with the full knowledge that a large portion of the cost of the sewer would have to be paid by the city, but the city made no provision for meeting this obligation.

This being true, the city was, by the provisions of said article, prohibited from incurring any new or additional indebtedness, unless such indebtedness could be paid

1. out of the current revenues of the city not devoted to other purposes. It will be observed that the language of the Constitution is positive and imperative. It declares that "no political or municipal corporation in this State shall ever become indebted, *in any manner or for any purpose,*" etc. (Our italics.) It is, therefore, wholly immaterial for what purpose the indebtedness, in excess of the constitutional limit, is incurred. It falls within the prohibition if the amount thereof exceeds the current revenues of the municipality. *City of Valparaiso* v. *Gardner* (1884), 97 Ind. 1, 49 Am. Rep. 416; *City of Laporte* v. *Gamewell, etc., Tel. Co.* (1896), 146 Ind. 466, 35 L. R. A. 686, 58 Am. St. 359; *Board, etc.,* v. *Gardner* (1900), 155 Ind. 165; *Cason* v. *City of Lebanon* (1899), 153 Ind. 567; *Voss* v. *Waterloo Water Co.* (1904), 163 Ind. 69, 66 L. R. A. 95, 106 Am. St. 201; *French* v. *City of Burlington* (1876), 42 Iowa 614.

This holding is not to be understood as contravening the decision of this court in *City of Logansport* v. *Dykeman* (1888), 116 Ind. 15, wherein it is held that a city, in-

2. debted beyond the constitutional limit, is not prohibited from contracting with an attorney or agent for his services to contest the validity of the city's indebtedness, or to secure a reduction thereof. Such indebtedness is held not to come within the scope of the constitutional provision.

In this case, so far as the constitutional inhibition is concerned, it makes no difference, nor does it afford the city of

Logansport or its authorities justification, by reason of the fact that the construction of the sewer in question was necessary in order to dispose of the storm water, and thereby prevent suits against the city for damages. The prohibition of the Constitution operates upon the indebtedness coming within it, without regard to the necessity therefor, and without regard to its form or the manner or method by which it is evidenced. *City of Laporte* v. *Gamewell, etc., Tel. Co., supra;* *Cason* v. *City of Lebanon, supra;* *Culbertson* v. *City of Fulton* (1888), 127 Ill. 30, 18 N. E. 781.

Having said this much as preliminary, and in answer to some of the contentions of appellants, we shall consider what the parties herein regard as the pivotal questions in the case. There appears to be a wide difference between counsel for the respective parties in respect to the time at which the indebtedness, incurred by the city for its portion of the cost of the construction of the sewer, arises. The contention of appellants' counsel is that no indebtedness could arise or be created against the city of Logansport until the final estimate of the benefits resulting to the city by reason of the sewer was ascertained, and an assessment therefor levied against the city. It is therefore argued that the fact that no assessment had been made against the city when this suit was instituted rendered the suit premature, and for this reason alone the relief demanded should have been denied by the lower court and the proceedings dismissed. The contention of appellee's counsel is that the indebtedness of the city for its share of the cost of the sewer was incurred at the time the work of constructing the sewer was completed by the contractor and the sewer accepted by the city. The theory adopted by the trial court apparently was that the indebtedness against the city for its portion of the cost of the sewer arose at the time the work was completed, and was accepted by the city, and as at that time the city was already indebted beyond the constitutional limit, and there being no provision for the payment of any

part of the indebtedness, the latter, under the provisions of the Constitution, was void in its entirety, and the injunction would lie. Appellants' counsel concede that this would be the result if the theory advanced by the trial court is correct, but they insist that, under the facts in the case and the law relative thereto, this theory is not correct, and cannot be sustained. They assert that the court adopted this theory in the very teeth of the holdings in the appeals of *Quill* v. *City of Indianapolis* (1890), 124 Ind. 292, 7 L. R. A. 681; *Voss* v. *Waterloo Water Co., supra; City of Valparaiso* v. *Gardner, supra; City of Laporte* v. *Gamewell, etc., Tel. Co., supra; Cason* v. *City of Lebanon, supra.* These cases do not sustain this latter assertion.

If, under the facts in this case, it can be held that the obligation of the city for its share of the cost of the sewer, which may be assessed against it at the time the final estimate is made, was created at the time the work was completed by the contractor and accepted by the city, then it is settled that the city has no legal authority to pay such assessment. *Cason* v. *City of Lebanon, supra,* was a suit to enjoin the city of Lebanon from letting a contract for improving a street in that city. Among the grounds upon which it was sought to base the right to injunctive relief was that the city would incur an indebtedness on account of street and alley crossings to the amount of $1,500, which indebtedness, as charged in the complaint, would be in violation of the provisions of article 13 of the state Constitution. This court, in considering the constitutional question there involved, said: "If the city does not have the money with which to pay its share of the cost of said improvement when the same is completed and accepted, as well as its ordinary current expenses that came into existence at or before the time of said acceptance, it has no right or authority to pay the same at any time thereafter and may be enjoined from so doing."

We are constrained to differ with appellants' learned counsel, that in no sense could any indebtedness exist against the city for its share of the cost of the construction of the sewerage system until the final assessment of special benefits arising therefrom was made by the board of public works, and the amount determined which the city would be required to pay. Section 3544 Burns 1905, Acts 1905, p. 219, §120, pertaining to towns and cities, provides: "In making assessments against each lot or parcel of land for the construction of any sewer, as provided for in this act, said board of public works shall, as soon as any contract for the construction of any such sewer has been completed, make out an assessment roll, with the names of the property owners and descriptions of the property primarily assessed for such sewer or drain as hereinbefore provided. * * * The board shall also have the power to determine what part, if any, of the benefits resulting from such improvement accrue to said city, and any amount so found shall be assessed against such city on said roll and paid out of funds appropriated to the use of said board for such purpose by the common council: Provided, that no more than $500 shall be paid out of the city funds for any one improvement, unless pursuant to an ordinance specially appropriating the same for such specific improvement."

While it is true that there is no positive declaration in the statute that any indebtedness shall accrue in favor of the contractor against either the benefited property owners or the city for the cost of making the improvement, nevertheless it will be noted that §3544, supra, requires the board of public works "as soon as the contract for the construction of any such sewer has been completed," to make out an assessment roll, etc., or, in other words, to take the necessary steps, and determine, primarily at least, the special benefits accruing to the several lots and parcels of land. The provisions of this section also empower and require the board of public works to determine what portion, if any, of the bene-

fits resulting from the improvement shall be apportioned on the assessment roll to the city, such assessment roll, when completed, to be delivered to the department of finance.

When the contractor, in such cases, has fully completed his work according to the contract, then the duty, under the law, devolves upon the city, through its proper officials, to receive and accept it. The contract price for the work, when so completed, certainly had been earned by the contractor, and when the city accepts the work as completed it is manifest that at such time an indebtedness comes into existence against the city in its corporate entity for whatever benefits it derives therefrom. The power to determine the amount of money which the city shall pay as the equivalent of the benefits derived by it by reason of the improvement is by law lodged in the board of public works. The mere determination of such amount by the board certainly cannot be said to create the indebtedness against the city for its share of the work.

It is not material when the city's share of the indebtedness which arises out of the construction of the sewer becomes due and payable to the contractor. The real question is, at what time did the debt come into existence? For, as said by this court in *City of Laporte* v. *Gamewell, etc., Tel. Co., supra:* "The rule is that the cash must be in the treasury to pay the same when the debt comes into existence, not when it becomes due." The maturity of the debt is not controlling. In *City of Springfield* v. *Edwards* (1877), 84 Ill. 626, the court said: "A debt, payable in the future, is, obviously, no less a debt than if payable presently; and a debt payable upon a contingency, as upon the happening of some event, such as the rendering of service or the delivery of property, etc., is some kind of a debt, and therefore within the prohibition." Of course no indebtedness can be said to arise against the city in advance of anything's being supplied to it; but let us suppose, by way of illustration, that a city should purchase, on a deferred payment, horses neces-

sary for its use. Could it, in reason, be asserted that an indebtedness would not be created against the city for the amount of the purchase price of the horses at the time they were furnished to and accepted by the city under the purchase contract? With what plausibility then can it be argued that, when the contractor in this case furnished to the city the sewer, completed according to the contract, and it was accepted by the city, an indebtedness was not created against the city for whatever benefits it derived by reason of the construction of such sewer? Again, suppose that A should furnish to B for his use certain property, under a mutual agreement that the amount of its value to be paid by B should thereafter be determined by certain designated persons. Under such circumstances, certainly an indebtedness would be created against B in favor of A at the time the property was accepted by B for the amount of its value as subsequently determined by the persons designated for that purpose. This, we think, fairly illustrates the view that the indebtedness against the city in this case was created at the time the sewer was completed, received and accepted by the city. We are confirmed in this view of the question, and in so holding we are supported by the following authorities: *City of Laporte v. Gamewell, etc., Tel. Co., supra; Cason v. City of Lebanon, supra; Culbertson v. City of Fulton, supra; City of Springfield v. Edwards, supra; French v. City of Burlington, supra; Buck v. City of Eureka* (1899), 124 Cal. 61, 56 Pac. 612.

In *City of Laporte v. Gamewell, etc., Tel. Co., supra,* the court said: "It is clear that the indebtedness came into existence December 18, when the work was completed and accepted, if not before. There was not sufficient cash in the city treasury to pay said indebtedness at that time, and the constitutional provision was violated."

In *Buck v. City of Eureka, supra,* which was an action to recover for the value of the services of an attorney at law, it was said in the syllabus: "The implied liability was in-

curred when from time to time the services were fully rendered, and the city, with knowledge, accepted the benefit of them.''

At the time the sewer was completed and accepted by the city, at which time, as we hold, the indebtedness came into existence, it was already indebted beyond the constitutional limit, and there was no money in its treasury available to pay any part thereof. Certainly any attempt on the part of the city officials to raise money by levying a tax against the property of appellee and other taxpayers of the city to pay the prohibited indebtedness, either in whole or in part, would be without the warrant of law and could be enjoined. *Cason* v. *City of Lebanon, supra.*

The officials of the city apparently entertained the view that the total assessment against the city could be met by it in annual instalments, and thereby an indebtedness could be avoided by the city's levying a tax to pay each of such annual instalments. The law, however, affords no warrant for this view of the question. The sewer was not contracted for upon any instalment plan. Necessarily, therefore, whatever part of its cost which was chargeable to the city would have to be assessed against it as an entirety, and so paid. However, were such view correct, the unfortunate financial condition of the city left it without any money to apply to the payment, in whole or in part, of even the first instalment of $15,000, for which, as it appears, the board of public works requested an appropriation. It was conceded at the trial that the city would have no money during the year 1906 to apply upon the assessment, or on any instalment thereof, and that the only source from which it expected to secure funds to apply to the payment of this instalment was the proposed levy of seventeen cents which was about to be made on October 1, 1906. This levy would have realized for the city about $15,000 for the year 1907.

Certain alleged intervening errors are presented and urged by appellants for reversal; but, as the judgment of the

lower court, under the facts established and the law applicable thereto, is clearly right, it must be affirmed, without regard to any intermediate errors, as such errors, under the circumstances, can exert no influence over the merits of the case. *Germania Fire Ins. Co.* v. *Pitcher* (1903), 160 Ind. 392, and authorities cited.

After a careful consideration of this appeal, we discover no available error. The judgment is therefore in all things affirmed.