## TOWN OF SHERIDAN *v.* ROTHSCHILD.

[No. 22,237. Filed February 17, 1914. Rehearing denied April 1, 1914.]

1. APPEAL.—*Constitutional Questions.—Jurisdiction.*— Jurisdiction of an appeal in which a constitutional question is involved is vested exclusively in the Supreme Court. p. 407.
2. APPEAL.—*Waiver of Error.—Briefs.*—Appellant's failure to set out a demurrer or the substance thereof in its brief precludes a consideration of alleged error in the trial court's ruling thereon. p. 407.
3. APPEAL.—*Waiver of Error.—Failure to Except to Conclusions of Law.*—Alleged error in the trial court's conclusions of law is waived by failure to except to such conclusions. p. 407.
4. MUNICIPAL CORPORATIONS.—*Contracts.— Indebtedness.— Exceeding Constitutional Limit.*—Where, at the time of entering into contracts for the installation of electrical machinery and an engine for a municipal light plant, pursuant to §§4363-4372 Burns 1901, Acts 1893 p. 185, providing that the contractors for such work shall not be paid to exceed seventy-five per cent of the contract price until the plant has been successfully operated and shown to be fully equal to the specifications for a period of at least ninety days after the completion of the plant, the town had a debt limit of $9,626 and a bonded debt of $3,500, and the contract price for the installation of the plant aggregated $7,285, the letting of the contracts was in violation of §4367 Burns 1901, Acts 1893 p. 185, §5, requiring the rejection of bids where the price of the plant will exceed the debt limit. p. 408.
5. MUNICIPAL CORPORATIONS.—*Contracts.—Indebtedness.—Liability.*—Where the total contract price for the installation of electrical machinery in a municipal light plant under the act of 1893 (Acts 1893 p. 185, §§4363-4372 Burns 1901), was $5,120, there was no

liability on warrants in the sum of $1,985, issued in final payment of the contract price prior to the completion of the contract, since under that act the contractor cannot be paid in excess of seventy-five per cent of the contract price until the contract has been completed and in successful operation for at least ninety days, and consequently no indebtedness in the amount of such warrants was owing to the contractor at the time they were issued. p. 411.

From Superior Court of Marion County (81,683); *Clarence E. Weir*, Judge.

Action by Henry Rothschild against the Town of Sheridan. From a judgment for plaintiff, the defendant appeals. *Reversed*.

*George W. Osborn* and *M. E. Bash*, for appellant.
*A. C. Pearson, Russell Willson* and *Romney L. Willson*, for appellee.

MORRIS, C. J.—On February 25, 1910, appellee instituted this action against appellant, by complaint in three paragraphs, each declaring on a town warrant executed by appellant to the Fort Wayne Electric Corporation. The three warrants were executed August 20, 1898, each calling for $660.61 and six per cent interest, and payable out of the town's general fund on July 10, 1899, August 20, 1900, and August 20, 1901, respectively. It is averred that the warrants were delivered and assigned to appellee, by written endorsement, and that the principal and interest thereon remain due and wholly unpaid. A demurrer to the complaint was overruled. Appellant answered by general denial, plea of the ten-year statute of limitations, and further averred that each warrant was void because executed in violation of Art. 13, §1, of the Indiana Constitution, adopted March 14, 1881, which declares that no municipal corporation shall become indebted for any purpose, in an amount exceeding two per cent on the value of the taxable property of the corporation. In this paragraph it is averred that when the warrants were executed, appellant was already

indebted beyond its constitutional limit.   In its fourth para-
graph of answer, appellant avers that the warrants were
executed in payment of a debt due said electric corporation
on a contract for the installation of an electric light plant;
that the work of installation was not completed until May 1,
1898, and that at that time the town was already indebted
in a sum beyond the constitutional limit of two per cent
on its taxables.

The cause was tried by the court, with a special finding
of facts, and conclusions of law, to which appellant failed
to except.   Judgment was rendered for appellee on the
warrants falling due in 1900 and 1901.   The court con-
cluded that the action on the warrant due in 1899, was
barred by the statute of limitations.

Appellee has filed a motion to transfer this appeal to the
Appellate Court, because the judgment is for a sum less than
$6,000.   Appellant based one of its causes of defense
1.   on a right guaranteed by our Constitution.   Juris-
diction to determine such appeals is vested exclusively
in this court.   Subd. 1, §1, Acts 1907 p. 237, §1392 Burns
1908; *Curless* v. *Watson* (1913), 180 Ind. 86, 102 N. E. 497.
The motion to transfer is overruled.

Appellant contends that the court erred in overruling its
demurrer to the complaint.   Its failure to set out the de-
murrer, or the substance thereof, in its brief, pre-
2.   cludes a consideration of the ruling.   It also claims
error in each of the court's conclusions of law on the
facts specially found.   The failure to except to the
3.   conclusions waives their consideration.   Appellant's
motion for a new trial, grounded in part on the
alleged insufficiency of the evidence to support the decision,
was overruled, and that question is properly presented here
for review.

There was no material conflict in the evidence, which
shows that on January 8, 1898, pursuant to the provisions
of the act of March 1, 1893 (Acts 1893 p. 185, §§4363-4372

Burns 1901), appellant entered into a contract with the Fort Wayne Electric Corporation for the installation of certain machinery for an electric light plant, and, at the same time entered into a contract with the Russel Engine Company, to furnish an engine for the plant, to supply the necessary power. By the terms of the contract the electric corporation was to be paid $4,870 for its work when completed. The contract with the engine company provided for the payment of $2,165 on the completion of its work. Subsequently, during the progress of the work of installation, the contract with the electric corporation was so modified as to provide for an additional compensation of $250, for extras furnished, making its entire contract price $5,120. It is conceded that in 1895 the civil town, by the laws then in force, became indebted for the payment of schoolhouse bonds, for $3,500, with six per cent interest payable semi-annually on April 1 and October 1, of each year. *Wilcoxon* v. *City of Bluffton* (1899), 153 Ind. 267, 54 N. E. 110; *Eddy Valve Co.* v. *Town of Crown Point* (1906), 166 Ind. 613, 76 N. E. 536, 3 L. R. A. (N. S.) 684. No part of such bonded indebtedness matured previous to 1899. It is further conceded that the two per cent debt limit for appellant, in 1898, was $9,626. On January 8, 1898, the town had no building or site for the contemplated plant. It afterward bought a lot, and erected a building thereon, for such purpose, at an expense of from $1,200 to $1,400, and paid for the same out of the proceeds of a $6,000 bond issue. Some time after the letting of the contracts for the engine and electrical machinery of the plant, appellant's officers began negotiations for a bond issue to procure money to pay for the entire plant. They were disappointed on learning that, because of the debt limit, they could not find a purchaser for an issue in excess of $6,000, but, on March 24, 1898, the town sold for $6,060, bonds dated March 1, 1898, of the face value of $6,000, with six per cent interest. The expense of selling the

same was $60. The proceeds of the bond sale, excepting enough to pay for the lot and building, already erected, were divided between the electric and engine companies, as follows: the electric company was paid $2,435, on March 24, 1898, and, on April 8, the further sum of $700, leaving a balance of $1,985, for which, less a small amount, the warrants in suit were subsequently issued; on March 25, the engine company was paid $1,523. The evidence does not disclose what progress had been made previous to March 24, by the engine and electric companies toward the completion of the installation work; however, it does show that it was intended that it should be finished during the month of April, but there was an unavoidable delay which prevented the completion until May 1, when it was accepted, as finished. The total town revenue, for the general fund, available in 1898, was $797, which was scarcely sufficient to pay officers' salaries and other necessary current expenses. It is conceded that in 1898, it was impossible to pay for any electric installation work from current revenues of that year. Counsel for appellee admit that when the work was completed on May 1, and thereafter when the warrants were executed on August 20, the town was indebted beyond its constitutional limit, but they base their contention of validity on the theory that the warrants were executed as evidence of the town's indebtedness under its contract of January 8, with the electric corporation, and that the indebtedness was fixed on that date; that then the town's school bond debt, added to the electric company's contract price, amounted to less than the town's debt limit of $9,626. Appellee's counsel say they presented the case on such theory below, and that the trial court adopted it. The theory is erroneous. The question as to time when indebtedness arises, in contemplation of such constitutional limitations as is here involved, may, in some cases, be difficult of answer. Note to *Hagan* v. *Commissioners Court* (1909), 37 L. R. A. (N. S.) 1062. It must be conceded that under

an ordinary contract for the sale of machinery or other chattels, no indebtedness is created prior to delivery. *City of Logansport* v. *Jordan* (1908), 171 Ind. 121, 85 N. E. 959, 37 L. R. A. (N. S.) 1036, 17 Ann. Cas. 415.

The statute under which this work was done (Acts 1893 p. 185, *supra,*) provides for no bond to secure the performance of the contract, but it does declare that "the contractors for said plant shall not be paid to exceed 75 per cent of the contract price thereof until said plant has been successfully operated and shown to be fully equal to specifications embraced in said contract, for a period of at least 90 days after the completion of said plant." It is quite obvious that a debt might exist from the time of the execution of a contract that provides for a deferred payment by the obligor; yet, considering that this electric company was agreeing only to deliver and install certain electrical machinery, and considering the provisions of the act of March 1, 1893, we are of the opinion that no indebtedness existed here, until the completion of the work, and then only to the extent of 75 per cent of the contract price; that the indebtedness for the remaining 25 per cent did not arise until at least 90 days after the completion of the work. See *Cason* v. *Lebanon* (1899), 153 Ind. 567, 55 N. E. 768, and cases cited. It appears that the contract with the Fort Wayne Electric Corporation, was for only a part of the plant, and was executed at the same time as was that with the Russel Engine Company. These two contracts called for an expenditure of $7,285. Before either of them could be completed, it was necessary for the town to furnish a site and building, which entailed a cost of at least $1,200. The debt limit on January 8, was little more than $6,000. The letting of the contract was in violation of §5, Acts 1893 p. 185, §4367 Burns 1901, which required the rejection of bids where the price of the plant exceeded the debt limit.

However, in view of the conclusions we have reached, it is unnecessary to consider the question of the validity of

the warrants on the assumption of the existence of the indebtedness at the time the contract was executed. Under the facts here disclosed no indebtedness to appellee's assignor existed prior to the completion of the contract, and consequently there is no liability on the warrants. Judgment is reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 104 N. E. 66. As to what is within the meaning of prohibition against indebtedness in respect of municipalities, see 44 Am. St. 229.