GAMEWELL FIRE-ALARM TEL. CO. v. CITY OF LAPORTE.

(Circuit Court of Appeals, Seventh Circuit. June 5, 1900.)

No. 649.

MUNICIPAL CORPORATIONS—ULTRA VIRES CONTRACTS—REMEDY OF PARTY IN EQUITY.

Complainant installed and delivered to the defendant city, for municipal use, a fire-alarm telegraph system, under a contract which was void because it created an indebtedness on the part of the city beyond the constitutional limit. *Held*, that a court of equity could not change the contract into one giving to complainant an implied franchise to maintain and operate the system for its own benefit, or authorizing a recovery by complainant of possession of the plant as an entirety, where certain of the apparatus was furnished by the city, and the wires over part of the lines were strung on poles owned by the city.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appeal is from a decree, entered on demurrer, which dismissed the bill of complaint, as amended, for want of equity. 96 Fed. 664. The bill alleges substantially the following facts as the grounds for equitable relief: The complainant is a New York corporation, and engaged in the business of making and installing "fire-alarm and police telegraph systems," and on July 16, 1890, made proposal, in writing, to furnish to the city of Laporte, for the

sum of $3,500, its "system of automatic fire-alarm telegraph," according to specifications stated in the proposal, to be completed and ready for operation within four months. The apparatus, material, and work to be supplied by the complainant included a "tower bell striker," but not the bell, and all the new poles "necessary to complete the line circuit." Payment of the contract price was to be made by the city on May 1, 1891, and on receipt thereof the proposal states that "unrestricted license to use and perpetuate the apparatus" is thereby conveyed to the city. It further provides that the city shall furnish a suitable room for the station, and "shall secure the right of way through the public highways for the wire circuit, give the use of all poles now standing that may be owned or controlled by said city, and the use of such bell as may be selected for giving alarms." This proposal was accepted on behalf of the city after an opinion was given, in writing, by the city attorney to the effect, among other matters, that objections "that the city cannot incur a debt, as they now owe more than the constitutional limit," are not sufficient to defeat the wish of the common council, because there existed in the general fund an unappropriated balance which could be employed for the payment contemplated by the contract, and, if no funds were applicable, warrants could be drawn, payable when the tax of the current year was collected. "Relying upon said contract, and said opinion as to its legality," the complainant furnished and installed the system accordingly, which was accepted by the city on December 19, 1890; and the system thus installed "is complete and entire, and incapable of dismemberment or disintegration without destroying the use thereof, and without irreparable injury to the several parts composing the same." When the time for payment matured, the city refused to pay the contract price; and the complainant brought suit in the state court for its recovery, which resulted in a decision by the supreme court of the state (City of Laporte v. Gamewell Fire-Alarm Tel. Co., 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686), that the contract was void by reason of the indebtedness of the city beyond the constitutional limit, and judgment was rendered against the complainant accordingly. The system so constructed is "of great utility and even of prime necessity" to the city, and, being in the possession of the complainant after completion, was turned over to the city in the faith and belief that the contract was obligatory on the city and payment would be made; and after such decision the city was permitted to retain possession pending negotiations for an adjustment, and "solely for the public use and safety," and "not with intent to waive or part with any interest or right therein." The indebtedness of the city has since become reduced to such extent that it may lawfully become obligated "to buy said plant and system," and many fair proposals were made to the defendant to that end, but were all rejected: and finally, about February 28, 1898, the complainant became convinced that it was necessary, "in justice to itself, to acquire possession of and to operate said plant, through and by its own officers, agents, and employés," and thereupon, "with such objects in view, * * * demanded possession of said plant from said city." The city refused compliance, and has since wrongfully withheld the plant from complainant, and continued the use thereof; and, although such use is reasonably worth $600 per annum, the city has refused to pay reasonable compensation therefor, after deducting its proper expense and outlay. The complainant "tenders and holds itself ready and willing to perform and discharge all public duties" incident to said system, and avers that it is without adequate remedy at law. The prayers for relief are, in substance: (1) That the defendant be enjoined pendente lite from use of the system in any manner unless fair compensation is paid, jurisdiction over the plant to be retained by the court to enforce such payment; (2) that an accounting be had for past use; (3) that the defendant be adjudged as holding the system and all easements and franchises as trustee for the use and benefit of the complainant, subject only to considerations of public safety and convenience; (4) that, in default of satisfactory arrangement between the parties, the defendant be required to make over to the complainant's possession the system, with all easements and franchises, as an entirety; (5) that the defendant be thereafter perpetually enjoined from interference with the management, operation, or disposition of the plant.

James B. Curtis, for appellant.

James S. Harlan, for appellee.

Before WOODS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after making the foregoing statement, delivered the opinion of the court.

The appellant, who was the complainant below, contracted to furnish a fire-alarm system or plant, to be owned and operated by the city of Laporte, at a purchase price to be paid by the city in the following year after completion and acceptance; and this in the face of the fact, then known to all parties, that the existing indebtedness of the municipality was beyond the amount limited by the constitution of the state, and that it was thereby prohibited from incurring further indebtedness. The plant, having been installed in conformity with the contract, was accepted, and went into the possession and use of the city, but payment was refused; and thereupon the appellant sued in a state court to recover the purchase price, resulting in a final adjudication dismissing the action on the ground that the contract violated the constitutional provision referred to, and was invalid. City of Laporte v. Gamewell Fire-Alarm Tel. Co., 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686. On such state of facts, equitable relief is sought through the present bill, which is predicated on the conclusiveness of that adjudication to bar recovery upon the contract; and it is conceded in the argument for support of the bill, as clearly held in the kindred case of Litchfield v. Ballou, 114 U. S. 190, 193, 5 Sup. Ct. 820, 29 L. Ed. 132, that the invalidity is equally effectual against any implied promise to pay for the reasonable value of the property so furnished. The question is not presented of right on the part of the appellant to recover and remove any severable material or appliances furnished by it under the contract, and so appropriated by the city, for the reason that relief of that character is inadmissible, if not impossible, under the allegations of the bill, even if otherwise the subject of equitable remedy. It is expressly alleged that the plant, which includes portions contributed by the city, constitutes an entirety, and is "incapable of dismemberment or disintegration without destroying the use thereof, and without irreparable injury to the several parts composing the same," and, in effect, that the only available remedies in favor of the appellant are (1) an accounting in reference to the past use, to ascertain just compensation therefor; (2) an arrangement between the parties for future compensation in an annual rental for the use; or, in default of such arrangement, (3) the plant to be turned over as an entirety, "complete and ready for operation," to the appellant, as owner, for management and use, together with a perpetual franchise for that purpose, to be implied from the contract.

The bill rests on the theory that the contract is so far severable that laying aside the void promise of the city to pay for the plant, as purchaser, there remains the permission which was granted by the city for its construction, together with the fact of the actual operation of the plant by the contractor for a brief period before it was delivered over, and that out of these circumstances equity may imply a grant

by the city of a franchise to the contractor to operate and manage the system as the beneficial owner, and will enforce both ownership and franchise in his favor whenever the contract of purchase becomes inoperative. How the intended public nature of the system, described as one "of great utility and even of prime necessity to the city," can thus be preserved, is neither disclosed nor intimated. In other words, the appellant invokes equitable relief, not only to set aside the contract, which was deliberately made between the parties, but to substitute a new contract, and establish relations with the municipality not contemplated in the original transaction. The contract provided for a plant to be owned and operated by the city, for municipal purposes, clearly within its power; and the invalidity arose out of the creation of a debt to accomplish the purpose, and not in the purpose for which it was made. To save the contractor who furnished work and materials under this contract from sacrifice of his contribution in whole or in part, a decree is demanded to create and enforce a contract between the parties departing radically from that which was intended and entered into; placing the plant and its control in private hands, together with a perpetual franchise to so maintain and operate the system. The terms of the contract as made afford no semblance of support for the contention that the grant of a franchise to that end may be inferred, and, aside from the consideration of the inviolable nature of municipal powers in that regard, the doctrine is well established that no measure of relief which would so change the contract purposes and relations can be granted by a court of equity, even in the absence of all remedy at law. Magniac v. Thomson, 15 How 281, 299, 14 L. Ed. 696; Hedges v. Dixon Co., 150 U. S. 182, 192, 14 Sup. Ct. 71, 37 L. Ed. 1044. As stated in Magniac v. Thomson:

"Whenever the rights or the situation of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim, 'Æquitas sequitur legem,' is strictly applicable."

The case presented by the bill is within the rule held in Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132, where the conditions were analogous in many respects. Bonds were there issued by the municipality, beyond the constitutional limit, for the construction of waterworks, and were finally held invalid for that reason. The bondholders then proceeded in equity to obtain satisfaction of the bonds through a sale of the waterworks plant, but their claim of an equitable lien for that purpose was declared untenable, and the bill was dismissed. So in the case at bar the decree properly dismisses the bill for want of equity, without prejudice to proceedings at law, and it is accordingly affirmed.