## JORDAN v. CITY OF LOGANSPORT ET AL.

[No. 21,709. Filed July 5, 1912. Rehearing denied December 10, 1912.]

1. APPEAL.—*Divided Court.—Affirmance.*—Under the provisions of §701 Burns 1908, §659 R. S. 1881, where one of the judges of the Supreme Court is incompetent to participate in the decision of a cause on account of interest therein, and the remaining judges are equally divided in the decision thereof and are equally divided on consideration thereof at the next succeeding term, the judgment of the trial court must be affirmed without costs. p. 630.

From Cass Circuit Court; *Henry J. Paulus,* Special Judge.

Action by Michael A. Jordan against the City of Logansport and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Miller, Shirley & Miller* and *Long, Yarlott & Souder,* for appellant.

*Lairy & Mahoney* and *McConnell, Jenkines, Jenkines & Stuart,* for appellees.

Cox, C. J., and Monks, J., are of the opinion that the act of 1907 (Acts 1907 p. 499), relating to sewers in cities of the State having a population of more than 16,000 and less than 20,000, according to the last preceding United States census, is in violation of the Constitution of this State; that

the court below should have found for appellant and rendered judgment in his favor, as prayed for in the complaint. The court erred in overruling appellant's motion for a new trial. The judgment of the court below should be reversed, with instructions to sustain appellant's motion for a new trial.

Morris and Spencer, JJ., are of the opinion that said act is not in violation of any of the provisions of the State or Federal Constitution, as claimed by appellant; that the court did not err in overruling the motion for a new trial, and that the judgment should be affirmed.

Myers, J., being interested in said cause, and incompetent to participate in the decision thereof for that reason, and the remaining judges having been equally divided at the last term, and being equally divided at this term, the judgment of the court below is affirmed without cost.

See §701 Burns 1908, §659 R. S. 1881.

Separate opinions to be filed during this term.

## SEPARATE OPINION.

MONKS, J.—This action was brought by appellant, as a resident taxpayer of the city of Logansport and the owner of real estate assessed for the construction of a sewer in said city, against said city, its officers and the contractor who constructed said sewer, appellees here, to enjoin said city and its officers from paying any money from the treasury of said city to said contractor or his representatives for the alleged use of said sewer by said city under an alleged lease of said sewer to said city executed by said contractor, and to enjoin the levy and collection of any tax for the purpose of providing money for the payment under said lease, and asking that said lease be declared void and canceled. A trial of said cause resulted in a finding and judgment against appellant.

It appears from the record that in the years 1905 and

1906 there was constructed in the city of Logansport a large combination storm-water and sanitary sewer, known as the "west side sewer." Appellee Uhl was the contractor who constructed said sewer, and the same was constructed under the provisions of an act of the General Assembly approved March 11, 1901 (Acts 1901 p. 534, §§3623a-3623h Burns 1901). Said sewer was completed by said Uhl in February, 1906, and at that time was accepted and approved by the proper officers of said city. After the sewer had been accepted by the city, the city, at its own expense, extended the sewer from the river bank to the water channel. Said sewer was provided with catch basins as inlets for surface-water from the streets and alleys, and was so constructed as not to admit water at any other points except through said sanitary inlets. No provision was made for flushing said sewer, except by said surface-water from the streets and alleys. The amount due said Uhl under the contract for the construction of said sewer was reported by the civil engineer of said city as being $173,574.39. After the adjustment of appeals from assessments, the total assessment against the real estate benefited was $116,124.02, and against the city of Logansport was $57,449.47. From the time said sewer proceedings were begun, and at all times since, said city of Logansport has been indebted in excess of two per cent of the taxable property of said city, as shown by the tax duplicate, and no provision has been made by said city at any time for the payment of any portion of the cost of constructing said sewer assessed against the city. Said final assessment of $57,449.47, made against the city of Logansport, was, when made, and ever since has been, void by reason of said indebtedness of said city. At no time since said sewer proceedings were commenced has there been any fund in the treasury of said city or belonging to said city available for paying any part of the cost of said sewer or said assessment against said city. Upon suit by appellant, a taxpayer, against said city it has been enjoined from paying any part

of said assessment of $57,449.47 on the ground that said city
was already in debt beyond the constitutional limit, in viola-
tion of article 13, §1, of our State Constitution, which judg-
ment was, on October 29, 1908, affirmed by this court on
appeal soon after the action was commenced. *City of Lo-*
*gansport* v. *Jordan* (1908), 171 Ind. 121, 85 N. E. 959, 37
L. R. A. (N. S.) 1036, 17 Ann. Cas. 415. This court, in
another appeal involving the same assessment, after this
action was commenced, held and determined on November
24, 1908, that said assessment was wholly void for the same
reason. *Jordan* v. *City of Logansport* (1908), 171 Ind. 280,
86 N. E. 47. At least 500 different pieces of real estate
owned by many different persons were assessed as specially
benefited by the construction of said sewer. Said sewer
furnishing an outlet for sanitary sewerage from said lots
and parcels of ground. Prior to March 1, 1908, a large
number of said persons had made connections with said
sewer from their respective lots and parcels of ground, for
the purpose of sanitary sewerage. Afterward, and before
the commencement of this action, on March 31, 1908, the
city of Logansport, a city of the fourth class, under and by
virtue of an act of the General Assembly of the State of
Indiana, approved March 11, 1907 (Acts 1907 p. 499, §8727
Burns 1908), entered into a contract with said contractor
Uhl, which purports to lease said sewer to said city. This
lease, after reciting the construction of the sewer and the
city's inability to pay the assessment against it for the con-
struction of the sewer, and the consequent ownership of
said sewer by contractor Uhl, purports to grant to said Uhl
a franchise to operate said sewer in the streets and alleys
where it is located, and also purports to lease said sewer
of and from said Uhl for the drainage of the streets and
alleys of said city for a period ending December 1, 1918,
unless sooner terminated by the purchase of the sewer by
the city from the contractor on the terms stipulated in the
lease. For the use of the sewer, the city by this lease agreed

to pay $3,722.21 on June 1 and December 1 in each year, beginning June 1, 1908. It was provided that the city should have the right to purchase said sewer from Uhl at any time during the term of the lease, or at the termination thereof, for the sum of $57,449.47, and that any amounts paid as rental under the lease should be credited on such purchase price; that in case the city failed to pay the stipulated rental, or exercise its option to purchase, it should have no right to use said sewer for the drainage of its streets and alleys; that at the expiration of the period of rental, and after all instalments of rent had been paid, the title to the sewer should automatically revest in the city without any transfer by or from Uhl. It was further provided that the city should at its own expense keep said sewer in repair during the term of the lease.

Said act of 1907 (Acts 1907 p. 499, §§8727, 8728 Burns 1908) reads as follows: "Section 1. Be it enacted by the general assembly of the State of Indiana, That in all cases where a sewer or drain has been constructed or may be constructed in the future, in any city having a population of more than sixteen thousand and less than twenty thousand inhabitants, according to the last preceding census of the United States, under any law heretofore, now or hereafter in force in this state upon the subject, and such city shall be unable from any cause to pay the assessment which has been made or may hereafter be made against it on account of benefits derived by said city from the construction of such sewer or drain, the title to such sewer or drain shall, as against such city be, and remain, in the contractor who shall have constructed, or may hereafter construct such sewer or drain. Section 2. That, in all cases as are provided for in section one of this act, the city in which such sewer or drain has been or may be constructed, shall have power to grant a franchise to such contractor to operate such sewer or drain in the streets, alleys and public places of said city under such conditions as may be imposed, and

shall have power by ordinance or contract to lease said sewer or drain or to otherwise provide for the use of said sewer or drain by said city for the drainage of its streets, alleys and public grounds and for other municipal purposes upon such terms as may be agreed upon between said city and such contractor: Provided, That nothing contained in this act shall affect any pending litigation.''

Said sewer was completed by the contractor and accepted by the city in February, 1906, long before said act was passed in 1907. Appellant first insists that when said act took effect in 1907 the title to said sewer was vested in said city, and that in so far as said act of 1907 may be deemed to attempt to take the title to said sewer from the city and vest it in the contractor it is in violation of article 1, §21, of the State Constitution, prohibiting the taking of property without compensation and without due process of law.

Appellees contend, however, ''that sewers are not the private property of cities like water-works plants, electric light plants, etc., but that a sewer constructed by assessments under the laws of this state is property of a public or governmental character, that a city has no vested right in such property, that the city holds it only as a mere instrumentality of government and for the accomplishment of governmental purposes; that even if the technical title to such sewer vested in the city it may be taken away by the legislature.''

The contract for the construction of said sewer was not invalid, although the city's part of the expense therefor created an indebtedness beyond the constitutional limit, and was therefore void, and could not be collected from the city for that reason. Under such circumstances, the contractor was entitled to recover the part of the cost of said improvement payable by the abutting owners, which was $116,124.02. *McGillivray* v. *Joint School Dist.* (1901), 112 Wis. 354, 358, 88 N. W. 310, 88 Am. St. 969, 971, 58 L. R. A. 100.

Said contractor was chargeable with notice of the limita-

tion on the power of the city to become indebted beyond the constitutional limit, and in dealing with the city he did so at his peril. *Cason* v. *City of Lebanon* (1899), 153 Ind. 567, 576, 55 N. E. 768, and cases cited; *State, ex rel.*, v. *City of Helena* (1900), 24 Mont. 521, 539, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. 453. He knew, therefore, that unless the city had the cash on hand, arising from current revenues, with which to pay its part of the contract price when the work was completed and accepted, as provided in the contract, as well as its ordinary running expenses, as the same came into existence, the city could not be compelled to pay its part of the contract price, because it was unable to become indebted to him under such circumstances. *Cason* v. *City of Lebanon, supra,* 576. The consideration to be paid by the abutting property owners was sufficient to support said contract, and the same was valid, even though when the sewer was completed and accepted, and assessments were made, an indebtedness was created against the city which was not collectable because in violation of the State Constitution. If the contractor was willing to take the chance of the city being able to pay its part of the contract price without violating the Constitution, no one had any ground for complaint, nor can the contractor complain because he is presumed to have knowledge that he could only collect the part of the contract price to be paid by the abutting owners. The title of the city to the sewer was the same as if it had not been indebted beyond the constitutional limit, but could have paid its assessment in full.

In 28 Cyc. 917 it is said: "But the construction and maintenance of municipal drains and sewers is a corporate or municipal as distinguished from a governmental function, and the system when constructed is the property of the municipality, and the general public of the state at large have no interest therein."

It was said in *City of Detroit* v. *Corey* (1861), 9 Mich. *165, *184, 80 Am. Dec. 78, 79: "The sewers of the city,

like its works for supplying the city with water, are the private property of the city—they belong to the city.'' *Child* v. *City of Boston* (1862), 4 Allen (Mass.) 41, 81 Am. Dec. 680, *Donahoe* v. *Kansas City* (1897), 136 Mo. 657, 667, 38 S. W. 571, and *City of Fergus Falls* v. *Boen* (1890), 78 Minn. 186, 188, 80 N. W. 961, are to the same effect.

In *State, ex rel.,* v. *Denny* (1889), 118 Ind. 382, 399, 400, 21 N. E. 252, 4 L. R. A. 79, it was held that the construction of sewers in cities was a matter of local concern.

It is evident that if a city owns an electric light plant, water-works plant, or other similar utility, bought and paid for by its own citizens, the legislature would have no more power to divest the local community of such ownership than it would to divest an individual or private corporation of the ownership of property. It is true the corporate existence of the municipality may be destroyed, and the control of such utilities vested in other public agencies of the local community, but said community cannot be deprived of its enjoyment of, nor its property right in, such utilities. This rule is founded not only on constitutional guaranties for the protection of property, but also on the right of local self-government, which is recognized and enforced in this State. *State, ex rel.,* v. *Denny* (1889), 118 Ind. 382, 21 N. E. 352, 4 L. R. A. 79; *State, ex rel.,* v. *Denny* (1889), 118 Ind. 449, 21 N. E. 274, 4 L. R. A. 65; *City of Evansville* v. *State, ex rel.* (1889), 118 Ind. 426, 21 N. E. 267, 4 L. R. A. 93. But even if sewers were classed as governmental instrumentalities of the State, it does not follow that such an instrumentality can be given by the legislature over to the absolute ownership and control of an individual or private corporation for private gain. In *Proprietors, etc.,* v. *City of Boston* (1893), 158 Mass. 509, 520, the court said: ''If the city has purchased property for purposes which are strictly and purely public, as a mere instrumentality of the State, such property is so far subject to the control of the Legislature that other

instrumentalities of the State may be substituted for its management and care; but even the State itself has no power to require the city to transfer the title from public to private ownership.'' So the legislature may take from cities the control of the local police, but in so doing it must transfer the control to some other governmental agency, and not to a private individual or a private corporation.

In this State, school corporations are a part of the educational system of the State, established in compliance with article 8, §§1-8, of the State Constitution, which makes it the duty of the legislature ''to provide, by law, for a general and uniform system of common schools, wherein tuition shall be without charge, and equally open to all.'' Such corporations are agencies of the State for the sole purpose of administering the State system of public schools. These subdivisions of the State are instrumentalities of the State government. *Freel* v. *School City of Crawfordsville* (1895), 142 Ind. 27, 41 N. E. 312, 37 L. R. A. 301; *Wilcoxon* v. *City of Bluffton* (1899), 153 Ind. 267, 270, 271, 54 N. E. 110; *Edwards* v. *State, ex rel.* (1895), 142 Ind. 84, 92, 42 N. E. 525; *Board, etc.,* v. *Allman* (1895), 142 Ind. 573, 576, 580, 42 N. E. 206, 39 L. R. A. 58, and cases cited.

But it was held by this court in *School Town of Andrews* v. *Heiney* (1912), *ante,* 1, 98 N. E. 628, that an act of the legislature depriving such school corporations of their real estate held and used for school purposes, would be unconstitutional and void as taking property without due process of law.

In *Street* v. *Varney Electrical Supply Co.* (1903), 160 Ind. 338, 66 N. E. 895, 61 L. R. A. 154, 98 Am. St. 325, the court held the act of 1901, attempting to fix the maximum rate of wages to be paid unskilled labor, unconstitutional, on the ground that it violated article 1, §23, of the State Constitution, and §1 of the 14th amendment to the Federal Constitution, and also was open to the objection that through its operation a citizen may be deprived of his property

without due process of law. The court said at page 342: "While the counties, cities, and towns are political and municipal subdivisions of the State, they are not governmental agencies in such sense as to subject the management of their local affairs, involving the making of contracts for labor and materials to be used upon local improvements, and the payment for the same out of the revenues of the county, city or town, to the arbitrary and unlimited control of the legislature. They are corporations as well as political and governmental subdivisions and agencies, and, as such corporations, they have the power to make contracts by which the rate of compensation for property sold to them is fixed. With regard to such contracts for the purchase of property or the employment of labor, counties, cities, and towns stand much upon the same footing as private corporations; and they can not be compelled by an act of the legislature to pay for any species of property more than it is worth, or more than its market value at the time and in the place where it is contracted for. The power to confiscate the property of the citizens and taxpayers of a county, city, or town, by forcing them to pay for any commodity, whether it be merchandise or labor, an arbitrary price, in excess of the market value, is not one of the powers of the legislature over municipal corporations, nor the legitimate use of such corporations as agencies of the State."

The difference between property held by a municipality for governmental purposes as an agency of the State, and such as it holds in its corporate capacity, is well established by a long line of decisions. *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595, 603, 607, 85 N. E. 513, and cases cited. This court said in the case last cited: "Those cases recognize the two fold character of such corporations, the one public so far as they are agencies of the state government, and the other private so far as they are to provide for matters of purely local concern." In *Proprietors, etc.,* v. *City of Boston, supra,* it is said: "Over property which a city

or town has acquired and holds exclusively for purposes deemed strictly public, that is, which the city or town holds merely as an agency of the state government for the performance of the strictly public duties devolved upon it, the Legislature may exercise a control to the extent of requiring the city or town, without receiving compensation therefor, to transfer such property to some other agency of the government appointed to perform similar duties, and to be used for similar purposes, or perhaps for other purposes strictly public in their character. * * * By a quite general concurrence of opinion, however, this legislative power of control is not universal, and does not extend to property acquired by a city or town for special purposes not deemed strictly and exclusively public and political, but in respect to which a city or town is deemed rather to have a right of private ownership, of which it cannot be deprived against its will, save by the right of eminent domain with payment of compensation. * * * But the general doctrine that cities and towns may have a private ownership of property which cannot be wholly controlled by the state government, though the uses of it may be in part for the benefit of the community as a community, and not merely as individuals, is now well established in most of the jurisdictions where the question has arisen. * * * Moreover, the legislative power over municipal property, when it exists, does not extend so far as to enable the Legislature to require a transfer without compensation to a private person or private corporation. The control which the legislature may exercise is limited; it must act by public agencies and for public uses exclusively.'' It was accordingly held in said case that the legislature of Massachusetts had no power to require the ground held by a city for cemetery purposes to be transferred without compensation to a private person or a private corporation.

Moreover the owners of the real estate assessed with $116,124.02 special benefits had a vested right to use said

sewer as an outlet for sanitary sewerage for their said respective lots and parcels of real estate so assessed, and to make connection therewith for that purpose, and were entitled to have said sewer owned and controlled by said city or some other public agency representing and responsible to said local community. *City of Fort Wayne* v. *Coombs* (1886), 107 Ind. 75, 83, 84, 7 N. E. 743, 57 Am. Rep. 82; *Robinson* v. *City of Valparaiso* (1894), 136 Ind. 616, 620, 36 N. E. 644.

The act of 1907, *supra,* purports to give the title and entire control over said sewer to the contractor, a private person, for his own gain. There is nothing in said act requiring him to lease said sewer to the city or any other public agency. The only way of flushing said sewer and keeping it in a sanitary condition is running the surface-water from the streets and alleys into the sewer through the catch-basins provided for that purpose. If the contractor has title to and control of the sewer as against said city, what is to prevent him from closing the inlets to said sewer, and thus stop the surface-water from running into the sewer, and thereby prevent its being flushed and kept in a sanitary condition? Indeed, it is expressly provided in the lease in controversy that in case the city fails to pay the stipulated rental, or exercise its option to purchase, "it shall have no right to use said sewer for the drainage of the streets and alleys." The right of said real estate owners to use said sewer, and have it flushed and kept in sanitary condition by the use of the surface-water from the streets and alleys, as provided for in the construction of said sewer, cannot be made to depend on the city's paying the so-called rental, or exercising its option to purchase said sewer.

It is next contended by appellant that said act of 1907 violates article 1, §23, of the State Constitution, in that it purports to grant special privileges to a certain class of citizens, which, on the same terms, do not belong to all

citizens. It is evident that said act of 1907 gives the contractors for a public sewer in cities having a population of more than 16,000 and less than 20,000, according to the last preceding United States census, rights and privileges that are not given to the contractors in any of the other cities in the State. It gives contractors for public sewers in such cities rights and privileges that are not given to street contractors, nor to water-works contractors, nor to contractors for the construction of other public works and improvements in said cities, nor to such contractors in the other cities of the State.

Appellees insist that the legislature has the power of classification for legislative purposes, and that said act is not open to the objection urged. "The legislature may make a classification for legislative purposes, but it must have some reasonable basis upon which to stand. It is evident that differences which would serve for a classification for some purposes would furnish no reason for a classification for legislative purposes. Such legislation must not only operate equally upon all within the class, but the classification must furnish a reason for and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter, and rest upon some reason which is natural and substantial, and not artificial. Not only must the classification treat all brought under its influence alike, under the same conditions, but it must embrace all within the class to which it is naturally related. Neither mere isolation nor arbitrary selection is proper classification." *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 674, 675, 80 N. E. 529, 14 L. R. A. (N. S.) 418, and cases cited. See, also, *Armstrong* v. *State* (1908), 170 Ind. 188, 193, 84 N. E. 3; *Kraus* v. *Lehman* (1908), 170 Ind. 408, 417, 421, 83 N. E. 714, 84 N. E. 769, and case cited; *Indianapolis Traction, etc., Co.* v. *Kinney* (1909), 171 Ind. 612, 616, 617, 85 N. E. 954, 23 L. R. A. (N. S.) 711; *Town of Longview* v.

*City of Crawfordsville* (1905), 164 Ind. 117, 121, 124, 73 N.
E. 78, 68 L. R. A. 622, 3 Ann. Cas. 496, and cases cited.

In *Bedford Quarries Co.* v. *Bough, supra,* it was said at
page 678, quoting from *Johnson* v. *St. Paul, etc., R. Co.*
(1890), 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419: "As
was said in the case referred to, to avoid the imputation of
'class' legislation, the classification, in cases of special legis-
lation, must be made 'upon some apparent, natural reason
—some reason suggested by necessity, by such a difference
in the situation and circumstances of the subjects placed in
different classes as suggests the necessity or propriety of
different legislation with respect to them' * * * It has
been sometimes loosely stated that special legislation is not
class legislation, 'if all persons brought under its influence
are treated alike under the same conditions.' But this is
only half the truth. Not only must it treat alike, under the
same conditions, all who are brought 'within its influence,'
but in its classification it must bring within its influence all
who are under the same conditions."

In *Street* v. *Varney Electrical Supply Co.* (1903), 160
Ind. 338, 66 N. E. 895, 61 L. R. A. 154, 98 Am. St. 325, the
court in holding the act in violation of article 1, §23, of the
State Constitution, said on page 347: "Lastly, we think the
statute obnoxious to the objection of class legislation. In
fixing the minimum rate of wages to be paid for unskilled
labor to be employed by counties, cities, and towns, on pub-
lic improvements, a classification is made which is unnat-
ural and unconstitutional. The laboring men of the State
may, for some purposes, constitute a class concerning which
particular legislation may be proper. This classification has
been recognized and sustained in statutes requiring the pay-
ment of wages in lawful money of the United States, for-
bidding the assignment of future and unearned wages, and
in similar acts. But no legal and sufficient reason can be
assigned for placing unskilled labor in a class by itself for

the purpose of fixing by the law the minimum rate of wages at which it shall be employed by counties, cities, and towns on their public works. Why exclude the skilled mechanic from the benefit of the act? Why compel the payment of a higher rate of wages to the unskilled laborer than may be demanded by the skilled mechanic for more difficult and important work, requiring special training, experience, and a higher degree of intelligence? Unless the legislature has . the power to fix the minimum rate of wages to be paid by counties, cities, and towns to carpenters, stone-masons, brick-layers, plumbers, and painters employed on local improvements, treating each trade as a separate class, it has not the power to enact laws fixing the compensation of unskilled laborers employed on similar works. No sufficient reason has been assigned why the wages of the unskilled laborer should be fixed by law and maintained at an unalterable rate, regardless of their actual value, and that all other laborers should be left to secure to themselves such compensation for their work as the conditions of supply and demand, competition, personal qualities, energy, skill, and experience, may enable them to do.''

Appellees claim that said act of 1907 only classifies cities of the State and things or structures to which it applies, and does not classify citizens. The mere fact that places and things are classified by the act does not relieve it of the vice of either special or class legislation. A classification of places and things may involve an unequal and improper classification of persons and a grant of special privileges to persons who live in such places or in connection with such things. It is said in *State, ex rel.*, v. *Parsons* (1878), 40 N. J. L. 1: "Interdicted local and special laws are all those that rest on a false or deficient classification; their vice is that they do not embrace all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed

of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects."

But appellees insist that where a statute does not make a classification of the citizens of the State, and does not deal with any of the seventeen subjects on which special or local laws are forbidden by article 4, §22, of the State Constitution, the law will be held valid, even though it is both special and local. The ground for this contention of appellees is that while article 4, §23, of the State Constitution provides that "in all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State," the question of whether a general law can be made applicable is a question for the determination of the legislature, and such determination is binding on the courts. *Gentile* v. *State* (1868), 29 Ind. 409.

Viewing said act of 1907 as a classification of cities of the State, as appellees claim it is, article 11, §13, of the State Constitution, prohibiting the creation of corporations by special laws, must be considered in determining the question of its constitutionality. *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 120, 73 N. E. 78, 68 L. R. A. 622, 3 Ann. Cas. 496. *In re Bank of Commerce* (1899), 153 Ind. 460, 462, 53 N. E. 950, 55 N. E. 224, 47 L. R. A. 489.

Article 11, §13, of the State Constitution provides that "corporations, other than banking, shall not be created by special act, but may be formed under general laws." This section relates to municipal as well as to private corporations. *Town of Longview* v. *City of Crawfordsville, supra,* and cases cited. It has been held by this court that article 11, §13, does not prohibit the enactment of special laws which do not attempt to create new corporate powers or franchises, but which merely regulate existing corporations in the exercise of powers already conferred on them; that

such special acts are not unconstitutional unless in conflict with some other provision of the Constitution. *Town of Longview* v. *City of Crawfordsville, supra,* and authorities cited.

It is evident from the authorities already cited in this opinion that said act of 1907 is a special act, and appellees admit that it is local. Under the provisions of §8643, subd. 4, Burns 1908, Acts 1905 p. 219, §42, in force since April 15, 1905, all cities in the State having a population of 10,000 or over, and less than 20,000, according to the last preceding United States census, are denominated cities of the fourth class. Under said section the city of Logansport was, when said act took effect, and is now, a city of the fourth class. It will be observed that said act of 1907 does not include all cities of the fourth class, but only those having a population of more than 16,000 and less than 20,000.

In *Inhabitants, etc.,* v. *State* (1889), 51 N. J. L. 402, 18 Atl. 749, 6 L. R. A. 56, the following language is used: "The rule is, that in any classification for the purpose of a general law, all must be included and made subject to it and none omitted that stand upon the same footing regarding the subject of legislation."

The rule and reasons therefor are forcibly stated in *State, ex rel.,* v. *Hammer* (1880), 42 N. J. L. 435, 440: "Plainly, a law may be general in its provisions, and may apply to the whole of a group of objects having characteristics sufficiently marked and important to make them a class by themselves, and yet such law may be in contravention of this constitutional prohibition. Thus, a law enacting that in every city in the state in which there are ten churches, there should be three commissioners of the water department, with certain prescribed duties, would present a specimen of such a law, for it would sufficiently designate a class of cities, and would embrace the whole of such class, and yet it does not seem to me that it could be sustained by the courts. If it could be so sanctioned, then the constitutional restriction

would be of no avail, as there are few objects that cannot be arbitrarily associated, if all that is requisite for the purpose of legislation is to designate them by some quality, no matter what that may be, which will so distinguish them as to mark them as a distinct class. But the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation. Principles of this sort can be best elucidated by examples. I have already given a sample of a merely arbitrary classification, founded on no casual relation between the subject-matter of such legislation and the things so classified. A sample of the other, or legitimate kind, would be signified, in a law that should give to all cities in the state situated in tide-water the privilege of using such waters in connection with their sewers. In such an enactment, but a part of the cities of the state would be embraced, but the classification would be lawful and proper, inasmuch as the places embraced would be possessed of a characteristic distinct from those possessed by the excluded places, such characteristic being of such a nature as to afford a reasonable ground for such special legislation. In the two classes of instances thus exemplified, the basis of the classification of the one would be by reference to marks of distinction having no connection with the substance of the supposed statute; in the other, the opposite of this would obtain—so that, in the former, the classification would be formal and arbitrary; in the lat-

ter, substantial and springing out of the nature of the subject of this legislation.''

These rules were approved by this court in *Town of Longview* v. *City of Crawfordsville, supra.* Applying these tests, it is clear that the classification in said act is arbitrary, whether considered as a classification of citizens, cities, or ''sewers, as distinguished from other structures or public works which are built under contract.'' There is no reason inhering in the subject-matter of the act for giving the rights and powers mentioned in said act of 1907 to the cities of the fourth class having a population of more than 16,000 and less than 20,000 according to the last preceding United States census, and not giving the same rights and powers to the other cities of the fourth class as well as to all the other cities in the State.

As said act of 1907 does not merely regulate cities coming within its provisions, but grants them new rights and powers not already conferred on them, it is in violation of article 11, §13, of the State Constitution. *Town of Longview* v. *City of Crawfordsville, supra; In re Bank of Commerce, supra;* 1 Thompson, Corporations §585; 10 Cyc. 177, 178.

It is next insisted that in so far as this case is concerned, the act is a plain attempt to validate and enforce an alleged obligation of the city of Logansport which had already been adjudged by the courts to be void and unenforceable, because in conflict with article 13 of the State Constitution. *City of Logansport* v. *Jordan* (1908), 171 Ind. 121, 83 N. E. 959, 37 L. R. A. (N. S.) 1036, 17 Ann. Cas. 415; *Jordan* v. *City of Logansport* (1908), 171 Ind. 280, 86 N. E. 47.

The sewer in question was constructed at a time when the city of Logansport was indebted far beyond the limit fixed by the State Constitution. The sewer was accepted by the city, and Uhl, the contractor, was claiming the right to collect the assessment of $57,449.47 from the city and to enforce the payment thereof when the same was enjoined. In enacting the law as applied to this case, the legislature at-

tempted to transfer the title to the sewer from the city to the contractor, and thus indirectly enable him to compel the city to pay the assessments against it for the construction of the sewer under the guise of rentals under said lease. It is stated in appellant's brief that the semi-annual instalments of rent under the lease aggregate substantially the amount of the assessment—$57,449.47—made against the city, with interest at five per cent, which assessment it was enjoined from paying.

The amount fixed in the lease, at which the city has the right to purchase the sewer at any time during the term of the lease or at the termination thereof, was $57,449.47, the exact amount of the assessment against the city, with interest thereon from April 1, 1908, and that any amount paid as rentals under the lease should be credited on such purchase price.

Article 13 of the State Constitution is as follows: "No political or municipal corporation in this state shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void: *Provided,* That in time of war, foreign invasion, or other great public calamity, on petition of a majority of the property owners, in number and value, within the limits of such corporation, the public authorities, in their discretion, may incur obligations necessary for the public protection and defense to such an amount as may be requested in such petition."

This prohibition in the State Constitution, limiting the power to become indebted in any way or for any purpose, is as effectual against an implied promise as an express promise, and is binding in equity as well as at law; and every person dealing with the city is bound to take notice of the

limitation on the power of a city to become indebted. *City of Laporte* v. *Gamewell, etc., Tel. Co.* (1896), 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686, 58 Am. St. 359, and cases cited; *City of Litchfield* v. *Ballou* (1885), 114 U. S. 190, 193, 194, 5 Sup. Ct. 820, 29 L. Ed. 132; 10 Rose's Notes to U. S. Rep. 1048-1050, and cases cited; 2 Supp. to Rose's Notes to U. S. Rep. 735, 736, and cases cited; 4 Supp. to Rose's Notes to U. S. Rep. 1260, and cases cited; *State, ex rel.,* v. *City of Helena* (1900), 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. 453, and cases cited; *Martin* v. *Territory of Oklahoma* (1897), 5 Okla. 188, 194, 48 Pac. 106; *City of Guthrie* v. *New Vienna Bank* (1896), 4 Okla. 194, 211, 38 Pac. 4, and cases cited.

Said Uhl, having contracted with the city for the construction of said sewer, with a full knowledge of its being indebted beyond the constitutional limitation, is without any equity in the sewer, before as well as after its completion and acceptance by the city. *City of Litchfield* v. *Ballou, supra; School Town of Winamac* v. *Hess* (1898), 151 Ind. 229, 239, 240, 50 N. E. 81, and cases cited; *City of Laporte* v. *Gamewell, etc., Tel. Co., supra; Cason* v. *City of Lebanon* (1899), 153 Ind. 567, 55 N. E. 768.

It was said by the Supreme Court of the United States in *City of Litchfield* v. *Ballou, supra:* "The holders of the bonds and agents of the city are *particeps criminis* in the act of violating that prohibition, and equity will no more raise a resulting trust in favor of the bondholders than the law will raise an implied assumpsit against a public policy so strongly declared."

Article 13 of our Constitution is substantially the same as a provision on the same subject in the constitution of Iowa, except that the limitation in the Iowa constitution is five per cent. In that state the legislature passed an act providing "that when a corporation has issued bonds in payment of an indebtedness exceeding five per centum on the value of the taxable property of such corporation for labor

upon and materials furnished in the erection and finishing of a building and making improvements for such corporation, the holders of such bonds or any of them, including the assignees thereof, shall have a lien upon such building and furniture and fixtures therein and upon the land of such corporation on which such buildings and improvements are situated to the amount of such indebtedness; any person having a lien by virtue of this act may enforce the same by equitable proceedings * * * at any time before the maturity of said bonds as though the action was for labor done and material furnished and used in the erection of said building. * * * The plaintiff shall set forth and the court shall ascertain and determine the entire amount of the indebtedness on such bonds and order the property be sold to pay such indebtedness and proceeds of the sale distributed pro rata among the holders of such indebtedness; but no money judgment shall be rendered against such corporation.''

In *Mosher* v. *Independent School District* (1876), 44 Iowa 122, the constitutionality of said act was involved. The court said: ''The legislature has no more power to provide a means for the collection of this void obligation than the school district. Both are equally bound by the constitutional prohibition, and it is not within the province of the legislature to enact that for all excess of the indebtedness of a school district above five per cent, created by building a schoolhouse or purchasing land for a schoolhouse site, the creditor may have a lien and sell the property, including building and site. * * * There may be cases of hardship on purchaser's of these invalid bonds, but it is better by far that counties, cities, towns and school districts be required to keep their indebtedness within constitutional limits, than that the fundamental law be construed to alleviate individual losses. Every one should be held to contract with a full knowledge of the provisions of the constitution of the state.''

The act involved in that case provided for the transfer of the property of the school corporation on which the schoolhouse was constructed to the bondholders, by giving them a lien thereon for the indebtedness represented by said void obligations, and authorizing its foreclosure, and a sale of said property to pay said void indebtedness, while in this case the act of 1907 attempts to transfer the sewer to the contractor without any such proceedings to accomplish the same purpose. In legal effect there is no difference. The effect of said act of 1907, if enforced in this case, would be to evade the constitutional limitation contained in article 13 of the State Constitution, and the same is therefore void. *Mosher* v. *Independent School District, supra; City of Laporte* v. *Gamewell, etc., Tel. Co., supra; Cason* v. *City of Lebanon, supra; Voss* v. *Waterloo Water Co.* (1904), 163 Ind. 69, 71 N. E. 208, 66 L. R. A. 95, 106 Am. St. 201, 2 Ann. Cas. 978, and cases cited; *Eddy Valve Co.* v. *Town of Crown Point* (1906), 166 Ind. 613, 76 N. E. 536, 3 L. R. A. (N. S.) 684, and cases cited; *City of Logansport* v. *Jordan, supra; Jordan* v. *City of Logansport, supra; Aetna Life Ins. Co.* v. *Middleport* (1888), 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537; *City of Litchfield* v. *Ballou, supra; Hedges* v. *Dixon County* (1893), 150 U. S. 182, 14 Sup. Ct. 71, 37 L. Ed. 1044; 10 Rose's Notes to U. S. Rep. 1048-1050, and cases cited; 2 Supp. to Rose's Notes to U. S. Rep. 735, 736, and cases cited; 4 Supp. to Rose's Notes to U. S. Rep. 1260 and notes. *Lake County* v. *Rollins* (1889), 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060, and cases cited; *Gamewell, etc., Tel. Co.* v. *City of Laporte* (1900), 102 Fed. 417, 42 C. C. A. 405, and cases cited; *Gamewell, etc., Tel. Co.* v. *City of Laporte* (1899), 96 Fed. 664; *McGillivray* v. *Joint School Dist.* (1901), 112 Wis. 354, 88 N. W. 310, 58 L. R. A. 100, 88 Am. St. 969, and cases cited.

It is next insisted that in so far as said act of 1907 applies to sewers that were completed and accepted by the city before said act took effect, the same is not expressed in the

title, and is, therefore, unconstitutional and void under article 4, §19, of the State Constitution. The title of said act, so far as is necessary to the determination of this question, is as follows: "An act concerning sewers and drains in cities having a population of more than 16,000 and less than 20,000, according to the last preceding United States census, providing for the title to such sewer or drain as against such city, remaining in the contractor under certain conditions," etc.

Contractors for the construction of public streets and sewers have no title to such streets or sewers while or after constructing the same. The fee simple title to the real estate occupied by such streets is generally in the owner of the lots and parcels of land abutting thereon, subject to said public easement, and the sewers are in such streets. There can be, therefore, no such thing as the title to such sewers or streets remaining in the contractor under the conditions named in said act, because title thereto was never vested in him. But even if the contractor had any title to said sewer before it was completed, he had no title thereto after it was accepted by the city, and as said sewer was accepted by the city before said act took effect, he had no title thereto when said act took effect "to remain" in him under the provisions thereof. As the title to said act of 1907 only includes sewers, the title to which is in the contractor at the time it took effect, or afterward, any provision in the act, that sewers accepted by the city before it took effect, and the title to which was not in the city at the time it took effect, should vest in or be the property of the contractor, would be unconstitutional and void under article 4, §19, of the State Constitution, because not expressed in the title of said act or properly connected therewith. State v. Dorsey (1906), 167 Ind. 199, 204, 78 N. E. 843, and cases cited; Indianapolis, etc., Traction Co. v. Brennan (1910), 174 Ind. 1, 16, 17, 87 N. E. 215, 90 N. E. 65, 90 N. E. 68, 91 N. E. 503, 30 L. R. A. (N. S.) 85, and cases cited.

There are other details mentioned in the title to said act, but as the powers and rights of the contractor and the city, mentioned in said act, are limited to sewers where the title thereto remains in the contractor under the provisions thereof, it is not necessary to consider them.

The act of 1907 (Acts 1907 p. 499, §8727 Burns 1908) is void, because in violation of the provisions of the Constitution of this State, as set out in this opinion.

These provisions of the Constitution bind the courts, limit the power of the legislature, the officials and the people themselves, and cannot be disregarded or ignored on account of the equity or supposed equity of any one. It follows that the court should have found for appellant and rendered judgment in his favor as prayed for in his complaint. In my opinion, the court erred in overruling appellant's motion for a new trial, and the judgment should be reversed.

Cox, C. J.—I concur in the conclusion reached in the opinion of Monks, J., that the act in question is unconstitutional and void, and that the judgment should be reversed.

## SEPARATE OPINION.

Morris, J.—I cannot concur in the opinion of Monks, J., that the act of the General Assembly, in controversy here, violates any provision of organic law. Article 1, §23, of our Constitution reads as follows: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

I am unable to discern wherein this provision is violated by the act in controversy, and think counsel for appellant have failed properly to interpret that provision of our Constitution. The provision simply limits the legislative power to grant to any citizen, or class of citizens, a privilege or an immunity which is not granted to other citizens on the same terms. This act does not classify citizens, in granting the privilege. It simply limits the thing to which the law is

applicable, and the locality within which it applies. Any person, regardless of color, sex, residence, occupation or other characteristic, or regardless of whether he is a citizen of Indiana, may become entitled to the privilege granted if he constructs a sewer within the given territory and under the given conditions. *Smith* v. *Indianapolis St. R. Co.* (1902), 158 Ind. 425, 63 N. E. 849; *Smith* v. *Stephens* (1910), 173 Ind. 564, 91 N. E. 167, 30 L. R. A. (N. S.) 704; *Strange* v. *Board, etc.* (1910), 173 Ind. 640, 91 N. E. 242; *Cummins* v. *Pence* (1910), 174 Ind. 115, 91 N. E. 529.

While the act may be conceded to be local, the subject-matter does not come within the prohibition of article 4, §22, of our Constitution. Article 4, §23, requires general laws, where they can be made applicable, but this court has held repeatedly and consistently that the question of the applicability of a general law is for the determination of the General Assembly. *Gentile* v. *State* (1868), 29 Ind. 409; *Long* v. *State* (1910), 175 Ind. 17, 92 N. E. 653; *Wiley* v. *Corporation of Bluffton* (1887), 111 Ind. 152, 12 N. E. 165; *Bell* v. *Maish* (1894), 137 Ind. 226, 36 N. E. 358, 36 N. E. 1118; *Mode* v. *Beasley* (1896), 143 Ind. 306, 42 N. E. 727; *Smith* v. *Indianapolis St. R. Co.* (1902), 158 Ind. 425, 63 N. E. 849.

The statute makes two classifications, viz., cities of the State, and the things or structures to which it applies. We have no constitutional inhibtion against classifying objects or structures, except article 4, §22, which has no application, because the statute does not deal with any of the seventeen specified subjects therein mentioned. Valid classifications of cities, or other municipal corporations, may be made on a population basis, for local self-governmental purposes, and other purposes, not embraced in the seventeen specified subjects in article 4, §22. *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337; *Strange* v. *Board, etc.* (1910), 173 Ind. 640, 91 N. E. 242.

It is not claimed by counsel for appellant, in their brief,

that the act is in violation of article 11, §13, of the Indiana Constitution. This section reads as follows: "Corporations other than banking, shall not be created by special act, but may be formed under general laws." If it should be conceded that this court may be warranted in reversing a judgment of a trial court on a constitutional point not contended for by appellant, I am persuaded that the act in no way purports to create a corporation within the meaning of the constitutional inhibition, and, in my judgment, nothing decided in the case of *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 73 N. E. 78, 68 L. R. A. 622, 3 Ann. Cas. 496, is in conflict with this view. *City of Indianapolis* v. *Navin, supra.*

The objection that the statute deprives the cities therein enumerated of local self-government is not tenable. *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595, 85 N. E. 513; *State, ex rel.,* v. *Fox* (1902), 158 Ind. 126, 63 N. E. 19, 56 L. R. A. 893.

Appellant earnestly contends that the defense is predicated solely on the act of 1907, under which the obligation sought to be enjoined was created, and that the lease, executed thereunder, is merely an indirect method of paying a void assessment previously enjoined.

It cannot be doubted that a contract, unlawful because in conflict with organic law, may not be made lawful by evasion or indirection.

It may not be amiss to state here that the judicial department of our government is expressly prohibited from exercising any function pertaining to that of the legislative department. Const., Art. 3, §1. The authority of the legislative department has been succinctly stated by this court as follows: "The legislative authority of this state is the right to exercise supreme and sovereign power, subject to no restrictions except those imposed by our own Constitution, by the Federal Constitution, and by the laws and treaties made under it." *Beauchamp* v. *State* (1842), 6

Blackf. 299. See, also, *Mount* v. *State, ex rel.* (1883), 90 Ind. 29, 46 Am. Rep. 192. Every presumption is in favor of the validity of a legislative act. Only when it is clearly subversive of the Constitution, beyond doubt or cavil, may the courts interfere to destroy it. *Smith* v. *Indianapolis St. R. Co.* (1902), 158 Ind. 425, 63 N. E. 849. *Bilters* v. *Board, etc.* (1881), 81 Ind. 125. Our Constitution does not contemplate a judicial power to censor the acts of the legislative or executive departments of the State government.

The proposition of appellant, that by the terms of the lease the city was seeking by indirection to pay a void assessment, is evidently predicated on the fact that the total rentals are very near, in aggregate amount, to that of the invalid assessment.

There was some conflict in the evidence, but on appeal only that most favorable to appellees can be considered, where the decision is sufficiently supported.

There was evidence that in negotiating for the lease the attorney for the contractor submitted a proposition for a lease on a basis having no reference to the void assessment. The total rental agreed on was $74,444.20, payable in semi-annual instalments of $3,722.21, covering a period of ten years. Even if the present value of the rentals was in an amount practically equal to the assessment, it does not necessarily follow that the lease was the equivalent of an obligation to pay the void assessment.

In *City of South Bend* v. *Reynolds* (1900), 155 Ind. 70, 57 N. E. 706, it appears that the facts were as follows: The city owned certain real estate, and contracted with one Oliver to erect thereon a city hall for the use of the city "said structure to remain the property of said Oliver unless and until the city should exercise the option given by said contract to purchase the same. That the hall shall be suitable for the needs of the city and according to named plans and specifications, the contract for construction to be left to the best bidder after due notice; the cost not to exceed

$75,000; and all contracts to be approved by the city. That the building when completed be leased to the city for twelve years, with a right of renewal for five years longer at a rental of $7,200, to be paid annually, as the same shall accrue from year to year. Oliver gives, and the city reserves, an option to purchase the building at the termination of the lease, or at any time during the term, at a price equal to the original contract price thereof with four per cent interest per annum, less the sum of the several amounts of rent then paid thereon with four per cent interest per annum on each item of said rent from the date of its payment. In case the city fail to exercise its option to purchase, Oliver has the option either to remove the building or to purchase the ground at its statutory appraised valuation within six months after the termination of said lease. Should he fail to exercise his option the structure thereby becomes the property of the city. In case the exercise of any option is delayed by any order of court or by some overpowering necessity, the time so lost is not to be counted. The city is to pay taxes and insurance, but in case of fire the insurance is to be invested in repair of the old building, or in the erection of a new one.'' When the contract was entered into the city was indebted up to the constitutional limit. Appellee sued the city of South Bend and Oliver, to enjoin them from carrying out the above contract, on the ground that the city thereby became indebted beyond the constitutional limit. Without dissent, this court held as follows: ''It is evident that rent for suitable offices, for the officers of a city, is as much an ordinary and necessary expense as the expense for water and light (*Grant* v. *City of Davenport* [1873], 36 Iowa 396, 403), and that when the city agrees to pay the rent for said offices annually or monthly, the contract does not create an indebtedness for the amount of all the annual or monthly payments. While the rent for suitable offices for city officers is an ordinary and necessary

expense, the erection of a city hall, or a building for the use of the city officers, is not in any sense an ordinary and necessary expense, but is an extraordinary one. *Grant* v. *City of Davenport, supra.* There is a clear and plain distinction between a contract for the use of rooms or a building for city purposes and the erection by the city of a building to be used for such purposes. The one is an ordinary and necessary expense, while the other involves municipal ownership of the building or rooms, the means of furnishing the offices, and is an extraordinary expense. *Brown* v. *City of Corry* [1896], 175 Pa. St. 528, 34 Atl. 854; *Grant* v. *City of Davenport, supra.* Under the contract in this case, however, the city hall is not to be erected by or for the city, but by Mr. Oliver who is to own the same, the city being the owner of the real estate upon which it is to be erected. The only contract of the city is to pay an annual rent of $7,200 which is admitted to be only a fair rental value for said building, and if the city does not exercise its option to purchase said building at or before the termination of the lease, to sell and convey the real estate at the price named, provided said Oliver exercises his option to purchase the same within six months after the termination of the lease. If neither party exercises the option provided for in said contracts, within the time fixed, then the city hall building becomes the property of the city. Under said contract the city is under no obligation whatever to pay anything for the erection of said building or to purchase the same when erected. If it should attempt to exercise its option to purchase said building, but cannot do so without violating the constitutional limitation as to becoming indebted, it may be enjoined from exercising such option. No facts are alleged in the complaint showing that the current revenues of the city will not be sufficient to pay the indebtedness for rent under said contract each year when the same comes into existence, including all other expenses for which the city

is liable. The allegations of the complaint do not show, therefore, that said contract creates any indebtedness in violation of the constitution. *Cason* v. *City of Lebanon* [1899], 153 Ind. 567 [55 N. E. 768]. It follows that the judgment must be reversed.''

The above decision was rendered in 1900, and has not been overruled. There are some points of difference in the facts, between the South Bend case and this one, but, in my opinion, there was as strong reason for holding the South Bend contract a constitutional evasion as in so holding here.

That the cost of building in the South Bend case furnished the principal basis for determining the rental, is evident. Indeed, the cost of construction in both cases furnishes the natural and just basis on which to figure rentals, and a resort to such basis furnishes no reason for the assertion that because thereof there was an attempt to evade the Constitution.

It is also asserted that the act violates article 4, §19, of our Constitution, because the subject-matter is not expressed in the title thereof. Without extending the opinion by a discussion of this proposition, I deem it sufficient to say that, in my judgment, the title of the act is not subject to the infirmity suggested. *State* v. *Closser* (1913), 179 Ind. ——, 99 N. E. 1057.

It is also contended that the act is in violation of the 14th amendment to the Federal Constitution, because it takes the private property of the city for private use, without due compensation and without due process of law. Neither pri-vate nor municipal corporations are citizens, within the meaning of §1 of the 14th amendment, and, in my judg-ment, the act in controversy is in nowise in conflict with the 14th amendment to the Federal Constitution. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033; *Inland Steel Co.* v. *Yedinak* (1909), 172 Ind. 423, 87 N. E. 229, 139 Am. St. 389; *Waters-Pierce Oil Co.* v. *Texas*

(1900), 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657; Dillon, Mun. Corp. §§22, 23; *Lafayette Ins. Co.* v. *French* (1855), 18 How. 404, 15 L. Ed. 451.

In conclusion of the whole subject, I feel it proper to say that municipal corporations should not be absolved from the operation of rules of honest conduct. It was not the intention of the framers of our State Constitution that cities or other governmental agencies should get something for nothing. This statute, in consonance with our highest conception of justice and fair dealing, declares that inasmuch as the city is unable to pay for the construction of the sewer, the title thereto, as against the city, shall be in the contractor. The city had no vested right in the work. The Constitution prohibited it from incurring any debt therefor. A retrospective act is constitutional, if it neither takes away a vested right in property nor impairs the obligation of a contract. This statute does neither.

It is not complained that the lease is unjust or burdensome to the city. The sewer construction in controversy cost the contractor about $65,000. The use of some sewer was an absolute necessity for the city. It could not pay for one because of the debt limit. The legislature had the power to enact the statute, and justice and fair dealing demands its upholding. Unless restrained by the Constitution, the legislature has the right to recognize a claim founded in equity, even though the obligation is only moral. *Hanly* v. *Sims* (1911), 175 Ind. 345, 93 N. E. 228, 94 N. E. 401; *Guthrie Nat. Bank* v. *City of Guthrie* (1899), 173 U. S. 528, 19 Sup. Ct. 513, 43 L. Ed. 796.

In my opinion, there is no error in the record, and the judgment should be affirmed.

Spencer, J., concurs in the above opinion. Myers, J., having been of counsel, did not participate.

NOTE.—Reported in 99 N. E. 1060, 1061, 1069. See, also, 3 Cyc. 405.